No. 23-16032

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

East Bay Sanctuary Covenant, et al.,

Plaintiffs-Appellees,

v.

Joseph R. Biden, President of the United States, in his official capacity, et al.,

Defendants-Appellants.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## BRIEF FOR *AMICUS CURIAE* IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF DEFENDENTS-APPELLANTS AND REVERSAL

Matt A. Crapo
Christopher J. Hajec
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

Attorneys for *Amicus Curiae*
Immigration Reform Law Institute

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

    1) For non-governmental corporate parties please list all parent corporations: None.

    2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

DATED: September 14, 2023          Respectfully submitted,

                                                      /s/ Matt Crapo
                                                      Matt A. Crapo
                                                      Immigration Reform Law Institute
                                                      25 Massachusetts Ave., NW, Suite 335
                                                      Washington, DC 20001
                                                      Telephone: (202) 232-5590

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES .................................................................................. ii

INTEREST OF *AMICUS CURIAE* .......................................................................1

INTRODUCTION ....................................................................................................1

SUMMARY OF ARGUMENT ................................................................................2

ARGUMENT ............................................................................................................3

    A.    A condition on asylum eligibility is not inconsistent with a mandatory right to apply for asylum ................................................................3

    B.    Congress expressly delegated authority to enact the Rule ....................4

    C.    The Rule is necessary to address exigent circumstances and foreign-affairs concerns ..........................................................................6

CONCLUSION .......................................................................................................10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Altria Group, Inc. v. Good*,
 555 U.S. 70 (2008) ..................................................................................6

*Arizona v. United States*,
 567 U.S. 387 (2012) ................................................................................7

*Bates v. Dow Agrosciences LLC*,
 544 U.S. 431 (2005) ................................................................................6

*East Bay Sanctuary Covenant v. Biden* ("*East Bay I*"),
 993 F.3d 640 (9th Cir. 2021) ..................................................................6

*East Bay Sanctuary Covenant v. Garland* ("*East Bay II*"),
 994 F.3d 962 (9th Cir. 2021) ..................................................................6

*Fourco Glass Co. v. Transmirra Products Corp.*,
 353 U.S. 222 (1957) ................................................................................5

*Kleindienst v. Mandel*,
 408 U.S. 753 (1972) ................................................................................9

*Mathews v. Diaz*,
 426 U.S. 67 (1976) ..................................................................................9

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*,
 551 U.S. 644 (2007) ................................................................................5

*Matter of Silva-Trevino*,
 26 I&N Dec. 826 (BIA 2016) .................................................................1

*Trump v. Hawaii*,
 138 S. Ct. 2392 (2018) ................................................................1, 4, 7, 9

*United States ex rel. Knauff v. Shaughnessy*,
 338 U.S. 537 (1950) ................................................................................7

*Wash. All. Tech Workers v. U.S. Dep't Homeland Security*,
  50 F.4th 164 (D.C. Cir. 2022) ................................................................................1

## STATUTES

5 U.S.C. §§ 801-808 (Congressional Review Act) ...................................................9

8 U.S.C. § 1103 ..........................................................................................................8

8 U.S.C. § 1103(a)(1) ................................................................................................8

8 U.S.C. § 1103(a)(3) ................................................................................................8

8 U.S.C. § 1103(g)(2) ................................................................................................8

8 U.S.C. § 1158 .....................................................................................................4, 5

8 U.S.C. § 1158(a) (1994) .........................................................................................5

8 U.S.C. § 1158(a)(1) ................................................................................................3

8 U.S.C. § 1158(b)(2)(A) ..........................................................................................3

8 U.S.C. § 1158(b)(2)(A)(ii) .....................................................................................3

8 U.S.C. § 1158(b)(2)(B) ..........................................................................................3

8 U.S.C. § 1158(b)(2)(C) ..................................................................................3, 4, 9

Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"),
  Pub. L. No. 104-208, Div. C, § 604, 110 Stat. 3009-546 (1996) ..........................4

Refugee Act of 1980,
  Pub. L. No. 96-212, § 201(b), 94 Stat. 102 ..........................................................4

## MISCELLANEOUS

Circumvention of Lawful Pathways,
  88 Fed. Reg. 31314 (May 16, 2023) ..............................................................2, 7, 8

## INTEREST OF *AMICI CURIAE*

*Amicus curiae* Immigration Reform Law Institute ("IRLI") filed this brief with the written consent of all parties.[1] IRLI is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including: *Wash. All. Tech Workers v. U.S. Dep't Homeland Security*, 50 F.4th 164 (D.C. Cir. 2022), *petition for cert. filed*, No. 22-1071 (S. Ct. May 1, 2023); *Trump v. Hawaii*, 138 S. Ct. 2392 (2018); and *Matter of Silva-Trevino*, 26 I&N Dec. 826 (BIA 2016).

## INTRODUCTION

Plaintiffs-Appellees are organizations that represent and assist asylum seekers. ER 5. Plaintiffs challenge a final rule promulgated by the Department of Homeland Security ("DHS") and the Department of Justice on May 16, 2023. The final rule, Circumvention of Lawful Pathways ("the Rule"), creates a presumption of asylum ineligibility for certain aliens who traveled through a country other than their own before entering the United States irregularly through the southern border

---

[1] No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

1

with Mexico. 88 Fed. Reg. 31314, 31449-52 (May 16, 2023). The Rule does not apply to: unaccompanied children, aliens authorized to travel to the United States pursuant to a DHS-approved parole process, certain aliens who present themselves at a port of entry, and aliens who have been denied asylum or other forms of protection by another country. ER 5. The district court determined that Plaintiffs have standing to challenge the rule, and that the rule is contrary to law, arbitrary and capricious, and procedurally infirm. ER 10-33. Because the district court erred in finding that the Rule is contrary to the Immigration and Nationality Act ("INA"), this Court should reverse on the merits.

## SUMMARY OF ARGUMENT

The district court's conclusion that the INA's mandate that all aliens may *apply* for asylum precludes the government from adopting presumptions of ineligibility for *grants* of asylum is incorrect. The statutory bars to granting asylum do not prevent the Executive from adopting additional regulatory limitations or conditions. Indeed, the asylum statute expressly allows the Executive to do so. The Rule is consistent with both that statute and this Court's prior decisions in this case. In addition, this Court should recognize the Rule as a valid exercise of the needed flexibility Congress has provided to the Executive to establish such limitations in order to adapt to changing conditions and exigent circumstances.

# ARGUMENT

As required in the asylum statute, the Rule clearly is consistent with it. Also, the INA grants the agencies that issued the Rule power to establish regulations they deem necessary to carry out their authority, and the agencies deemed the Rule necessary to maintain the functionality of the asylum system. In short, Congress plainly intended the Executive to have substantial flexibility in dealing with changes in circumstances, and the INA validly supplies it.

### A.  A condition on asylum eligibility is not inconsistent with a mandatory right to apply for asylum.

A rebuttable presumption of ineligibility for asylum is fully consistent with the mandatory right to *apply* for asylum. Indeed, the statute itself includes categorical bars to asylum eligibility notwithstanding its sweeping entitlement to apply for asylum. *Compare* 8 U.S.C. § 1158(a)(1) (right to *apply* for asylum) *with id.* § 1158(c)(2)(A)-(C) (exceptions to subsection (b)(1)'s permissive *grant* of asylum). For example, an alien "who arrives in the United States whether or not at a designated port of arrival" has an unfettered right to *apply* for asylum, 8 U.S.C. § 1158(a)(1), but immigration officials lack the authority to *grant* that application if the alien in question has been convicted of certain crimes. *Id.* § 1158(b)(2)(A)(ii). The INA does not create a right to obtain the discretionary grant of asylum merely by giving aliens the right to *apply* for asylum. The Supreme Court has recognized that the INA makes a similar distinction between obtaining a

3

visa to enter the United States and being deemed admissible to enter the United States. *Trump v. Hawaii*, 138 S. Ct. 2392, 2414 (2018) ("plaintiffs' interpretation … ignores the basic distinction between admissibility determinations and visa issuance that runs throughout the INA"). Neither the INA nor the Constitution prohibits allowing applications that are doomed to fail.

### B. Congress expressly delegated authority to enact the Rule.

The INA expressly authorizes the Executive to "establish additional limitations and conditions, consistent with this section, under which an alien shall be ineligible for asylum …." 8 U.S.C. § 1158(b)(2)(C). Nothing in the 1996 enactment[2] of this provision suggests that Congress intended to repeal the Executive's pre-existing discretion with respect to *denying* asylum. *See* Refugee Act of 1980, PUB. L. NO. 96-212, § 201(b), 94 Stat. 102, 105. Specifically, the relevant pre-1996 part of § 1158 provided as follows:

> The Attorney General shall establish a procedure for an alien physically present in the United States or at a land border or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 101(a)(42)(A).

---

[2] The contested provisions of current § 1158 were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). *See id.* § 604, 110 Stat. at 3009-690 to 3009-694.

4

*Id.* (former § 1158(a)); 8 U.S.C. § 1158(a) (1994). While it would plainly be inconsistent with § 1158 to *contradict* the categorical bars that Congress codified in the INA, *supplementing* those categorical bars by regulation is not inconsistent with § 1158.

Given that the Executive had broad discretion to deny asylum to any category of aliens before the enactment of IIRIRA, moreover, reading the 1996 amendment as implicitly narrowing that discretion in areas where IIRIRA was silent amounts to a repeal by implication. Repeals by implication are disfavored, *Nat'l Ass'n of Home Builders v. Defenders of Wildlife,* 551 U.S. 644, 662 (2007) ("*NAHB*"), and require "clear and manifest" congressional intent to repeal the prior authority:

> While a later enacted statute … can sometimes operate to amend or even repeal an earlier statutory provision …, repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest.

*Id.* (interior quotation marks and alterations omitted).[3] In the related context of federal preemption, the same clear-and-manifest standard is presumptively not met if the statute is linguistically open to a non-preemptive reading: "When the text of [a

---

[3] Although *NAHB* involved one statute's implicitly repealing another statute, the same principle applies to instances where a later version of a statute amends a prior version of the same statute: "no changes of law or policy are to be presumed from changes of language in the revision unless an intent to make such changes is clearly expressed." *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 227 (1957).

statute] is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors'" unsettling the canon. *Altria Group, Inc. v. Good,* 555 U.S. 70, 77 (2008) (quoting *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005)).

This Court has recognized that the Executive retains authority to treat an alien's method of entry as relevant to asylum eligibility. *East Bay Sanctuary Covenant v. Biden* ("*East Bay I*"), 993 F.3d 640, 671 (9th Cir. 2021). Similarly, in *East Bay Sanctuary Covenant v. Garland* ("*East Bay II*"), this Court acknowledged that the statutory bars to asylum do not "preempt[] the field, such that the government is entirely disabled from promulgating regulations with 'additional limitations and conditions' under which an alien would be ineligible for asylum." 994 F.3d 962, 978-79 (9th Cir. 2021). As explained by the Government in its opening brief, the Rule is consistent with both the INA and this Court's decisions in *East Bay I* and *II*. Brief for Appellants at 33-37.

### C. The Rule is necessary to address exigent circumstances and foreign-affairs concerns.

This Court should consider how the implications of the district court's judgment would injure the needed flexibility that the INA provides to the government. The government has correctly recognized a real emergency. Aliens are crossing the southern border at unprecedented levels, far exceeding the ability of the immigration system to process them in an orderly manner. Many asylum

claims are deemed to lack merit, and valid claims are not being timely adjudicated in the absence of the Rule. Circumvention of Lawful Pathways, 88 Fed. Reg. 31314, 31315 (May 16, 2023) ("The practical result of this growing backlog is that those with meritorious claims may have to wait years for their claims to be granted, while individuals who are ultimately denied protection may spend years in the United States before being issued a final order of removal."). The Rule is designed to reduce irregular migration, thereby allowing the government to devote more of its limited resources to processing asylum claims more effectively. *See id.* at 31,326.

The INA provides flexibility to the political branches to address the admission or exclusion of aliens:

> Thus the decision to admit or to exclude an alien may be lawfully placed with the President, who may in turn delegate the carrying out of this function to a responsible executive officer of the sovereign, such as the Attorney General. … It is not necessary that Congress supply administrative officials with a specific formula for their guidance in a *field where flexibility and the adaptation of the congressional policy to infinitely variable conditions constitute the essence of the program*.

*United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543-44 (1950) (internal quotation marks omitted, emphasis added); *Arizona v. United States*, 567 U.S. 387, 396 (2012) ("A principal feature of the removal system is the broad discretion exercised by immigration officials."); *Hawaii*, 138 S. Ct. at 2420 (even under the Constitution, courts should avoid "inhibit[ing] the flexibility of the President to

7

respond to changing world conditions") (interior quotation marks omitted).

In addition, the INA grants DHS the authority to establish regulations and take other actions "necessary for carrying out" the Secretary's authority under the immigration laws. 8 U.S.C. § 1103(a)(1) & (3). The INA likewise grants the Attorney General authority to "establish such regulations, . . . issue such instructions, review such administrative determinations in immigration proceedings, delegate such authority, and perform such other acts as the Attorney General determines to be necessary for carrying out" his duties under the INA. 8 U.S.C. § 1103(g)(2).

The agencies relied, at least in part, on § 1103 as authority to promulgate the Rule, 88 Fed. Reg. at 31323, and deemed the rule necessary for carrying out their duties under the INA. *See*, *e.g.*, 88 Fed. Reg. at 31326 ("[T]he Departments emphasize that this rule is necessary to prevent the expected increase in the number of migrants who would otherwise seek to travel without authorization to the United States after the termination of the Title 42 public health Order, which would risk undermining the Departments' ability to safely, effectively, and humanely enforce and administer U.S. immigration law, including the asylum system."); *id.* at 31332 ("The Departments believe that this rule is necessary to address the anticipated surge in irregular migration[]" and "to improve the overall functioning and efficiency of the immigration system."). Thus, § 1103 buttresses the authority

8

§ 1158(b)(2)(C) confers on the agencies to promulgate the Rule, particularly in light of the exigent circumstances at the border and the agencies' determination that the Rule is necessary for carrying out their respective duties under the INA.

Finally, the "exclusion of aliens is a fundamental act of sovereignty by the political branches." *Hawaii*, 138 S. Ct. at 2407 (interior quotation marks omitted). Because "decisions in these matters may implicate our relations with foreign powers" and involve "changing political and economic circumstances," these "decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary." *Mathews v. Diaz*, 426 U.S. 67, 81 (1976). Indeed, "[i]n accord with ancient principles of the international law of nation-states, … the power to exclude aliens is inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers—a power to be exercised exclusively by the political branches of government.'" *Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972) (citations, internal alterations, and quotation marks omitted). Of course, if Congress disagrees with the Rule, Congress can amend the statute or even reject the regulation. *See* 5 U.S.C. §§801-808 (Congressional Review Act). But federal courts should recognize the Executive's statutorily-created discretion to issue the Rule and not attempt to displace the political branches in setting immigration policy.

## CONCLUSION

For the foregoing reasons and those argued by the Government, this Court should reverse the judgment of the district court.

DATED: September 14, 2023         Respectfully submitted,

<u>/s/ Matt A. Crapo</u>
Matt A. Crapo
Christopher J. Hajec
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

Attorneys for *Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

1. The foregoing brief complies with the type-volume limitation of Fed. Fed. R. App. P. 29(a)(5) because:

This brief contains 2,207 words, including footnotes, but excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

DATED: September 14, 2023      Respectfully submitted,

/s/ Matt Crapo
Matt A. Crapo
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
Telephone: (202) 232-5590

Attorneys for *Amicus Curiae*

**CERTIFICATE OF SERVICE**

I certify that on September 14, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

<u>/s/ Matt Crapo</u>
Matt A. Crapo