No. 23-16032

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

East Bay Sanctuary Covenant, *et al.*,

*Plaintiffs-Appellees,*

v.

Joseph R. Biden, President of the United States, *et al.*,

*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the Northern District of California

———————————

## RESPONSE IN OPPOSITION TO MOTION TO INTERVENE

———————————

WILLIAM C. PEACHEY
*Director*

EREZ REUVENI
*Assistant Director*

PATRICK GLEN
CHRISTINA P. GREER
*Senior Litigation Counsel*
*Office of Immigration Litigation*
*Civil Division*
*U.S. Department of Justice*
*P.O. Box 868, Ben Franklin Station*
*Washington, DC 20044*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

DANIEL TENNY
SEAN R. JANDA
BRIAN J. SPRINGER
*Attorneys, Appellate Staff*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*
*202-514-3388*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

STATEMENT ....................................................................................................2

ARGUMENT ....................................................................................................4

The States' Motion to Intervene Should Be Denied........................................6

    A.    The States Lack a Concrete Interest in This Suit..........................6

    B.    The States' Asserted Interest in the Rule's Enforcement Is Adequately Represented by the Federal Government ..............................12

    C.    The States Cannot Otherwise Justify Intervention....................................15

CONCLUSION ............................................................................................ 17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## INTRODUCTION

Five States seek to intervene in this appeal of a final judgment vacating a Rule promulgated by the Department of Homeland Security and the Department of Justice in May 2023. The Rule imposes a condition on the discretionary grant of asylum that the Departments considered necessary to address a looming urgent situation at the southwest border. Since the Rule's promulgation, the federal government has vigorously defended the Rule in court, including through seeking emergency relief in this case to stay the district court's vacatur pending appeal. As a result, the Rule has been in effect every day since its promulgation 10 months ago, notwithstanding a number of pending legal challenges. Although the federal government has staunchly defended the Rule for the last 10 months—and although the States profess an interest in the maintenance of the Rule—the States now seek to intervene in this appeal, primarily on the basis of their speculation that the federal government may cease defending the Rule at some point in the future.

That motion should be denied. The States have not established any legally cognizable interest in the Rule's continued implementation sufficient to give them Article III standing to intervene, much less the significant protectible interest required to support intervention as of right. The States have not demonstrated that the federal government inadequately represents their asserted interest in maintaining the Rule; indeed, to the contrary, the States acknowledge that the federal government has successfully and vigorously defended the Rule for the last 10 months, including

seeking and obtaining a stay pending appeal to keep the Rule in place in light of the critical role the Rule continues to play. And the States' proposed intervention is precluded by numerous equitable and practical concerns, including that their proposed intervention would undermine Congress' policy choice to give authority over the federal government's litigation to the Attorney General and Solicitor General.

## STATEMENT

**1.** In May 2023, the Department of Homeland Security and the Department of Justice promulgated a Rule that conditions eligibility for a discretionary grant of asylum on migrants' using certain orderly migration pathways, absent exceptionally compelling circumstances. *See* Circumvention of Lawful Pathways, 88 Fed. Reg. 31,314 (May 16, 2023). The Departments concluded that imposing such a condition was necessary in light of the then-imminent end of the Title 42 public health order, under which migrants without proper travel documents often were not processed into the United States but instead expelled. The Departments anticipated that the end of the public health order would occasion a significant increase in migrants' seeking to enter the United States at the southwest border and concluded that the Rule was necessary to encourage the use of orderly migration pathways and discourage irregular migration, which leads to the presence in the United States of many noncitizens who entered unlawfully and will be found ineligible for asylum, diverts the government's limited resources, and threatens to overwhelm the immigration system.

2

Following the Rule's promulgation, plaintiffs—eight "immigration legal services organizations that represent noncitizens seeking asylum," ER-11—challenged the Rule under the Administrative Procedure Act. In addition, the Rule was challenged in three other district court suits. In two of those suits, State plaintiffs have generally argued that the Rule's exceptions are impermissibly lenient. *See Indiana v. Mayorkas*, No. 1:23-cv-106 (D.N.D.); *Texas v. Mayorkas*, No. 2:23-cv-24 (W.D. Tex.). In the third, immigration advocacy organizations and noncitizens challenged both the Rule and additional procedures applicable in expedited removal proceedings, generally arguing—like plaintiffs in this case—that the Rule and the challenged actions are impermissibly harsh. *See M.A. v. Mayorkas*, No. 1:23-cv-1843 (D.D.C.).

**2.** The district court in this case granted summary judgment in plaintiffs' favor and vacated the Rule in its entirety. *See* ER-36-38. At the government's request, however, the district court granted a 14-day administrative stay of its judgment. ER-38. The United States immediately appealed and sought a stay pending appeal in light of the tremendous disruption that vacatur of the Rule would cause. Before the expiration of the administrative stay, this Court granted a stay pending appeal. *See* Order, Aug. 3, 2023. This Court set the case for expedited briefing and argument, and the Court held oral argument in November.

In February 2024, the parties jointly moved for the Court to hold this appeal in abeyance (and filed a similar motion concurrently in *M.A.*, the district court suit challenging the Rule and various implementing actions). The parties explained that

3

counsel had "been engaged in discussions regarding the Rule's implementation and whether a settlement could eliminate the need for further litigation in either case." Joint Abeyance Mot. 2. In addition, the parties explained that this Court had preserved the status quo—the continued implementation of the Rule—by staying the district court's vacatur of the Rule. *Id.* Against that background, the parties jointly moved to hold the appeal in abeyance. This Court granted that motion and placed the appeal in abeyance. *See* Order, Feb. 21, 2024. Because the Court's stay pending appeal continues while the case is in abeyance, the Rule has remained in effect since that time—as it has continuously since it first took effect in May 2023.

**3.** After this Court granted the parties' motion to place this appeal in abeyance, five States moved to intervene in the appeal. At a high level, the States profess an interest in the Rule's continued implementation. The States generally speculate that the parties' motion for abeyance suggested that the federal government "can no longer be trusted to defend the Rule" or "to negotiate a good settlement." Mot. 3. Thus, the States seek leave to intervene for purposes of objecting to any settlement and to pursue this litigation if the government chooses to forgo further proceedings. *See* Mot. 1.

## ARGUMENT

This Court should deny the States' motion to intervene. The States primarily ask this Court to allow them to intervene as of right. *See* Mot. 11-21. And the States

briefly suggest that they should also be permitted permissive intervention. *See* Mot. 22. Neither of those arguments has merit.

"No statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed." *Cameron v. EMW Women's Surgical Center, P.S.C.*, 595 U.S. 267, 276 (2022). The resolution of such a motion is thus "committed to the discretion of the court before which intervention is sought." *Id.* at 278; *see also Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) ("In determining whether intervention is appropriate," this Court is "guided primarily by practical and equitable considerations.").

The Supreme Court has instructed that the exercise of that discretion should be guided by "the policies underlying intervention in the district courts," including "the legal interest that a party seeks to protect through intervention on appeal." *EMW Women's Surgical Center*, 595 U.S. at 277 (quotation omitted); *see* Fed. R. Civ. P. 24. More specifically, a party seeking to intervene in district court "as a matter of right must satisfy four requirements, namely that: (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Southern Cal. Edison Co. v. Lynch*, 307 F.3d 794, 802 (9th Cir. 2002) (quotation omitted); *see* Fed. R. Civ. P. 24(a). "[A] court may grant permissive intervention where the applicant for intervention shows

5

(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Southern Cal. Edison Co.*, 307 F.3d at 803 (alteration in original) (quotation omitted); *see* Fed. R. Civ. P. 24(b).

Here, the States fail to demonstrate a firm basis for intervening. The States lack the concrete interest in this suit required by Article III and by the standard for intervention as of right. The States also cannot show that the federal government does not adequately represent their asserted interest in the Rule's enforcement: The federal government has vigorously defended the Rule for the last ten months and intends to continue to do so. And the States present no cognizable or substantial equitable or practical reason to permit their participation in this suit.

## THE STATES' MOTION TO INTERVENE SHOULD BE DENIED

### A. The States Lack a Concrete Interest in This Suit

Intervention is designed to allow parties with a cognizable interest in the transaction or other subject of the litigation to participate in the litigation in order to ensure that their interests are not compromised in their absence. The States here have no such interest. The Supreme Court has recently held that States have no cognizable interest in the enforcement of the immigration laws against third parties and thus do not even have Article III standing, much less a distinct interest in the litigation as required for intervention. Two related doctrines require putative intervenors to demonstrate a legally cognizable interest that might be affected by the case: Article III

6

standing and the requirement of a judicially cognizable interest for purposes of intervention. Each of these doctrines precludes the States' motion here.

**1.** As an initial matter, in order to intervene in this litigation, the States would be required to establish Article III standing, which includes demonstrating a "legally and judicially cognizable" injury tied to the conduct that they challenge. *United States v. Texas*, 599 U.S. 670, 676 (2023) (quotation omitted). The States do not intend merely to participate in the litigation as the parties have formulated it—which they could in any event have done as amicus—and have disclaimed any interest in presenting arguments "to influence the Court's decision on the merits." Mot. 13. Instead, the States seek to intervene "to prevent a bad settlement and to defend the Rule" based on unsupported speculation that the federal government might cease to do so. Mot. 13-14. As the Supreme Court has explained, where an intervenor would "seek[] additional relief beyond that which the" parties seek, "an intervenor of right must demonstrate Article III standing." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017); *see also Diamond v. Charles*, 476 U.S. 54, 68 (1986) (When an intervenor seeks to "continue a suit in the absence of the party on whose side intervention was permitted," the intervenor must demonstrate its own standing to appeal.); *California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022) (A proposed intervenor-defendant who "seek[s] to intervene to defend" a party defendant that "is not defending itself" is "seek[ing] relief that no existing party to the case seeks" and "must establish constitutional standing."). And the same logic applies

7

to permissive intervenors: "For all relief sought, there must be a litigant with standing," *Laroe Estates*, 581 U.S. at 439, regardless of how that litigant joins the suit. *See Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 (D.C. Cir. 2018) ("Intervenors become full-blown parties to litigation, and so all would-be intervenors must demonstrate Article III standing.").

The Supreme Court's recent decision in *Texas*, 599 U.S. 670, reinforces the conclusion that the States have no cognizable interest in the resolution of this case. In brief, the Rule's direct effect is to impose a presumption of asylum ineligibility for certain noncitizens in the exercise of the Executive's discretion and thereby potentially subject those noncitizens to removal and expedited removal. Third parties—including the States—have no "judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). An entity that does not face prosecution "lacks standing to contest the policies of the prosecuting authority." *Id.* An entity similarly has "no judicially cognizable interest in procuring" or preventing "enforcement of the immigration laws" against someone else. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984).

In *Texas*, the Supreme Court applied those principles to hold that two States lacked standing to challenge the Executive's immigration enforcement priorities. *See Texas*, 599 U.S. at 676. In so holding, the Court rejected the States' argument that they had standing because, for example, the States might spend money on incarceration and social services for "noncitizens who should be (but are not being) arrested by the

Federal Government." *Id.* at 674. The Supreme Court held that the States' asserted injury, which flowed from the Executive's exercise of immigration enforcement discretion against third parties, did not overcome the rule of *Linda R.S.* and *Sure-Tan* that no one, including a State, has standing to challenge the exercise of enforcement discretion against others. *See id.* at 676-78. Although the Court did not resolve whether the analysis might be different in a challenge to a policy involving "legal status" or "benefits," *id.* at 683, the same result should follow. A third party, including a State, has no legally cognizable interest in the granting or denial by the federal government of immigration or financial benefits to an individual. And as in *Texas*, the potential downstream effect that a State might expend more on state programs in response does not overcome that barrier to standing.

Regardless of whether this Court accepts the government's arguments that the plaintiff organizations lack standing, *see* Opening Br. 18-22, the principles just described squarely preclude the States' claim to standing—and, a fortiori, their claim to an interest sufficient to support intervention. Like the States in *Texas*, the States here seek to claim an interest in the continued implementation of a discretionary immigration enforcement policy on the basis that any reversal of the policy would cause the States to make additional expenditures—"provid[ing] government resources" to noncitizens and "incurring administrative" and "compliance" costs. Mot. 16-17. But like the States in *Texas*—a decision movants neither cite nor attempt to distinguish—the States here cannot leverage the incidental, downstream effects of

enforcement policies directed at third parties that may lead the States to make additional expenditures to create standing for the States.

Nor can the States evade the bedrock principles just described by asserting a purported "political interest" in having relatively fewer noncitizens "settl[e] in New York, Illinois, California, and Colorado" in advance of the 2030 census. Mot. 18-19. For one, that asserted interest runs headlong into the core premise of *Texas*: that States (and other third parties) cannot assert any cognizable injury from the downstream effects of Executive enforcement decisions.

In addition, the States' claimed "political interest" in avoiding a loss of "[p]olitical representation" following the 2030 census, Mot. 18, is impermissibly attenuated and speculative. The States' apparent chain of causation includes that the government will settle this case and cease implementing the Rule (despite its vigorous defense to date); that there will be a resulting increase in noncitizens' entering the country who will settle disproportionately in States other than the movant States; that the disproportionate nature of those hypothetical future settlement patterns will be sufficiently large and sustained to result in a material difference in the census count six years from now; and that the material difference will happen to result in one or more of the movant States losing a seat in the House of Representatives. Each of the links in that "highly attenuated chain of possibilities" is speculative; together, they manifestly fail to "satisfy the requirement that threatened injury must be certainly

10

impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)—notwithstanding the States' unadorned assertion that "[t]hese concerns are not speculative," Mot. 19.

**2.** Relatedly, to support a request for intervention as of right, a prospective intervenor needs to demonstrate, among other things, a "significantly protectable interest" at stake in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971); *see also* Fed. R. Civ. P. 24(a)(2). As the Supreme Court has made clear, that barrier requires that a prospective intervenor do more than articulate some asserted harm or interest related to the action; instead, the intervenor must demonstrate that the interest in question is "legally protectible." *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 315 (1985); *see Diamond*, 476 U.S. at 75 (O'Connor, J., concurring in part and concurring in the judgment) ("Clearly, *Donaldson*'s requirement of a 'significantly protectable interest' calls for a direct and concrete interest that is accorded some degree of legal protection."). The Supreme Court and this Court have made clear that satisfying that standard requires a substantially more direct interest than does Article III and that indirect financial harms—like those claimed by the States—do not suffice.

Thus, for example, in *Donaldson*, the government sought to enforce administrative summonses issued by the Internal Revenue Service to Donaldson's former employer and its accountant for records related to Donaldson's tax liability. 400 U.S. at 518-20. The Supreme Court rejected Donaldson's argument that he could intervene in that suit as of right. While we may assume that the employer's and

11

accountant's disclosure of records potentially establishing Donaldson's tax liability surely would have injured him as a factual matter in an Article III sense, the Court concluded that Donaldson's claimed interest "cannot be the kind contemplated by Rule 24(a)(2)" because it was not independently legally protected. *See id.* at 530-31. Similarly, this Court has explained that a mere "economic stake in the outcome of the litigation, even if significant, is not enough" to demonstrate the requisite protected legal interest. *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993).

The States' claimed interest in this litigation stems from their assertions that, if the government were to stop defending or implementing the Rule, they would experience various downstream economic and "political" effects. As explained, those asserted concerns are noncognizable and overly speculative and cannot support even Article III standing. Even more so, they fail to establish any legally protected interest under Rule 24(a)(2)'s standard, to the extent this Court may look to that rule for guidance. The motion thus fails for this reason as well.

### B. The States' Asserted Interest in the Rule's Enforcement Is Adequately Represented by the Federal Government

Regardless, the States independently fail to support their motion for intervention as of right because they have not demonstrated that their interests are not "adequately represent[ed]" by the federal government, which has continuously defended the Rule and secured its continuance in the abeyance motion. *Southern Cal. Edison Co.*, 307 F.3d at 802 (quotation omitted).

12

In attempting to make the necessary showing, the States identify their interest as one "in maintaining the Rule." Mot. 19. But—as the States themselves acknowledge—the federal government has "vigorously defended the Rule." Mot. 19-20. As the government's filings in this case reflect, the government has repeatedly defended the Rule's legality, both substantively and procedurally, and has explained the extreme negative consequences to federal immigration policy that any vacatur of the Rule would occasion.

That vigorous defense has produced substantial results. Although various plaintiffs have brought at least four lawsuits challenging the Rule, none of those suits has produced a preliminary injunction of the Rule. And this suit is the only one that has proceeded to a final judgment. Although the district court vacated the Rule, the government requested—and the district court provided—a 14-day administrative stay of that vacatur to permit the government to seek emergency relief. ER-38. The United States immediately appealed and obtained a stay pending appeal before the expiration of the 14-day administrative stay. *See* Order, Aug. 3, 2023. That stay pending appeal remains in effect.

Thus, the Rule has remained in effect every day since it initially took effect in May 2023, in part because the government has vigorously defended the Rule and sought emergency relief when required to maintain the Rule's implementation. The movant States do not dispute any of that; indeed, they acknowledge the government's vigorous defense of the Rule. Instead, the States suggest that because the government

13

and plaintiffs have sought abeyance of this suit (and a suit pending in district court that raises related claims) pending settlement discussions, the government has "mysteriously stopped" defending the Rule and "propose[s] giving up the entire case." Mot. 20.

Those suggestions are unfounded. As explained, the stay pending appeal in this case remains in effect while the appeal is in abeyance. And in the district court suit that is also in abeyance, the court has not attempted to issue any relief against the Rule or against its implementation. Thus, so long as the two cases remain in abeyance, the Rule will remain in effect; that is exactly the outcome that the moving States desire.

Moreover, the States' claims that the government is proposing to "giv[e] up the entire case" are wholly speculative. The abeyance motion on which they rest this claim—a motion which, as noted, has the immediate effect of freezing the status quo while the Rule remains in effect—stated that the parties have "been engaged in discussions regarding the Rule's implementation and whether a settlement could eliminate the need for further litigation." Joint Abeyance Mot. 2. Participation in "discussions regarding the Rule's implementation" is not the equivalent of "giving up the entire case"; to the contrary, if the Rule can be "implemented" in a way that continues to protect the government's paramount interests while also addressing at least some discrete concerns of the plaintiffs, they might agree to resolve this case, allowing the litigation to be terminated on terms agreeable to both the federal government and the States. The States' speculation that the ongoing discussions, to

14

which they are not privy, have taken a different course than the parties represented to this Court provides no basis for presuming that the United States will fail to look out for the interests of the United States and the putative intervenors as well "in channeling migration into the United States through lawful and orderly pathways and alleviating the negative consequences of irregular migration." Opening Br. 53. The federal government intends to continue defending the Rule, and nothing in the States' motion supports a contrary conclusion.

### C.    The States Cannot Otherwise Justify Intervention

As explained, the States have no substantial interest in this suit, which concerns the Executive's implementation of discretionary immigration enforcement policies over which the federal government—not the States—has sole authority. Allowing the States to nevertheless intervene would raise substantial practical and equitable concerns that should preclude their participation in this suit.

Permitting intervention here would undermine the authority that Congress has placed in the Executive Branch to conduct litigation. The States' primary apparent justification for intervening would be to permit them to continue the case so as to defend the Rule if the government were (contrary to all indications) to seek to dismiss its appeal. But it would be inappropriate to permit such third parties—and especially third parties with such a marginal interest in the suit—to intervene in that (hypothetical) situation.  By statute, the "Solicitor General" and other "officer[s] of the Department of Justice" as the Attorney General may direct have responsibility for

15

"attend[ing] to the interests of the United States" in the courts. 28 U.S.C. § 517. In the case of the Solicitor General, those responsibilities have long included "[d]etermining whether, and to what extent, appeals will be taken by the Government to" the courts of appeals and whether to seek further review before the Supreme Court. 28 C.F.R. § 0.20(b). As the Supreme Court has explained, vesting this authority in the Attorney General and Solicitor General "represents a policy choice by Congress." *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 96 (1994). The Solicitor General has a "broad[] view of litigation in which the Government is involved throughout the state and federal court systems" and is therefore better positioned to evaluate the overall costs and benefits of pursuing a particular appeal than are others with more "parochial view[s]" of a given case. *Id.* There is certainly no basis to permit the States to intervene and seek to peremptorily usurp this authority, especially at this time, when there is no indication that the federal government intends to take any action that might be contrary to the States' preferences for the handling of this litigation.

16

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to intervene.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney*
*General*

WILLIAM C. PEACHEY
*Director*

DANIEL TENNY

EREZ REUVENI
*Assistant Director*

PATRICK GLEN
CHRISTINA P. GREER
*/s/ Sean R. Janda*
SEAN R. JANDA
BRIAN J. SPRINGER
*Senior Litigation Counsel*
*Office of Immigration Litigation*
*Attorneys, Appellate Staff*
*Civil Division*
*Civil Division, Room 7260*
*U.S. Department of Justice*
*U.S. Department of Justice*
*P.O. Box 868, Ben Franklin Station*
*950 Pennsylvania Avenue NW*
*Washington, DC 20044*
*Washington, DC 20530*
*(202) 514-3388*

March 2024

17

**CERTIFICATE OF COMPLIANCE**

This response complies with the type-volume limit of Circuit Rules 27-1(1)(d) and 32-3(2) because it contains 4041 words. This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Sean R. Janda*
SEAN R. JANDA

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2024, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Sean R. Janda*
SEAN R. JANDA