No. 23-16032

# In the United States Court of Appeals for the Ninth Circuit

EAST BAY SANCTUARY COVENANT, ET AL.,

*Plaintiffs-Appellees*,

v.

JOSEPH BIDEN, ET AL.,

*Defendants-Appellants*,

v.

ALABAMA, ET AL.,

*Proposed Intervenor-Defendants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

No. 4:18-cv-06810-JST

**BRIEF OF STATES OF FLORIDA, ARKANSAS, INDIANA, IOWA, KENTUCKY, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, NEW HAMPSHIRE, NORTH DAKOTA, OHIO, SOUTH CAROLINA, SOUTH DAKOTA, TEXAS, UTAH, AND VIRGINIA AS AMICI CURIAE IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANTS**

March 18, 2024

Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
(850) 414-2672 (fax)
*henry.whitaker@myfloridalegal.com*

ASHLEY MOODY
*Attorney General of Florida*

HENRY C. WHITAKER
*Solicitor General*
JAMES H. PERCIVAL
*Chief of Staff*
BRIDGET K. O'HICKEY
*Assistant Solicitor General*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................iii

INTRODUCTION AND INTEREST OF AMICI CURIAE ...................... 1

ARGUMENT ........................................................................... 4

I.    The Intervenor States have satisfied the standard for intervention of right on appeal. ...................................................... 5

    A.    The Intervenor States have a significant, protectable interest in ensuring the challenged rule stays in effect......... 5

    B.    Disposition of this appeal may impair the Intervenor States' interest because the existing parties may not adequately represent their interests. .................................... 7

    C.    The Intervenor States' motion to intervene is timely. ......... 10

II.    If the Court denies intervention of right, it should grant permissive intervention. ............................................................. 12

CONCLUSION ........................................................................ 13

CERTIFICATE OF COMPLIANCE........................................................ 16

CERTIFICATE OF SERVICE.............................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003) ....................................................... 10

*Arizona v. City & Cnty. of San Francisco,*
  596 U.S. 763 (2022) ................................................................ 2, 3, 6, 8

*Arizona v. Mayorkas,*
  143 S. Ct. 1312 (2023) ..................................................................... 2, 9

*Arizona v. Mayorkas,*
  143 S. Ct. 478 (2022) ................................................................... 9, 10

*Berger v. N. C. State Conf. of the NAACP,*
  597 U.S. 179 (2022) ............................................................................. 3

*Cameron v. EMW Women's Surgical Ctr.,*
  595 U.S. 267 (2022) ...................................................................... 4, 11

*City and Cnty. of San Francisco v. USCIS,*
  992 F.3d 742 (9th Cir. 2021) ............................................ 2, 8, 9, 10

*Day v. Apoliona,*
  505 F.3d 963 (9th Cir. 2007) ........................................... 4, 5, 7, 11, 12

*Florida v. United States,*
  660 F. Supp. 3d 1239 (N.D. Fla. 2023) ............................................ 6

*Freedom from Religion Found., Inc. v. Geithner,*
  644 F.3d 836 (9th Cir. 2011) ........................................................... 13

*Peruta v. Cnty. of San Diego,*
  824 F.3d 919 (9th Cir. 2016) ........................................................... 12

*Texas v. United States,*
  787 F.3d 733 (5th Cir. 2015) ............................................................. 7

*Texas v. United States,*
  No. 4:18-cv-167, 2018 WL 10562846 (N.D. Tex. May 16, 2018) .......... 2

*Trbovich v. United Mine Workers of Am.,*
  404 U.S. 528 (1972) ........................................................................ 10

*UAW v. Scofield,*
  382 U.S. 205 (1965) .......................................................................... 4

*United States v. City of Los Angeles,*
  288 F.3d 391 (9th Cir. 2002) ............................................................. 5

*United States v. Texas,*
  579 U.S. 547 (2016) .......................................................................... 7

## Statutes

8 U.S.C. § 1182(a)(4)(A) ............................................................. 10

## Rules

Fed. R. App. P. 29(a)(2) .............................................................. 1
Fed. R. Civ. P. 24(a)(2) ................................................... 4, 5, 11, 12
Fed. R. Civ. P. 24(b)(1)(B) ................................................... 5, 12

## Other Authorities

Am. Complaint, *E. Bay Sanctuary Covenant v. Biden*,
 No. 4:18-cv-06810 (N.D. Cal. May 18, 2023) ......................................... 3
Complaint, *Indiana v. Mayorkas*,
 No. 1:23-cv-106 (D.N.D. May 31, 2023) ................................... 3
Pet. Br., *Arizona v. Mayorkas*,
 No. 22-592, 2023 WL 363968 (Jan. 18, 2023) ......................................... 9
U.S. Env't Prot. Agency, Adhering to the Fundamental Principles of
 Due Process, Rule of Law, and Cooperative Federalism in Consent
 Decrees and Settlement Agreements (Oct. 16, 2017) .......................... 1

**INTRODUCTION AND INTEREST OF AMICI CURIAE**

Amici the States of Florida, Arkansas, Indiana, Iowa, Kentucky, Mississippi, Missouri, Montana, Nebraska, New Hampshire, North Dakota, Ohio, South Carolina, South Dakota, Texas, Utah, and Virginia (the "Amici States") submit this brief under Federal Rule of Appellate Procedure 29(a)(2) in support of proposed intervenor defendant States: Alabama, Kansas, Georgia, Louisiana, and West Virginia (the "Intervenor States").

The federal government's decision to abandon zealously defending the Circumvention of Lawful Pathways rule (the "challenged rule") in favor of settlement negotiations is troubling. As the government has previously recognized, an agency "should ordinarily zealously defend its action when facing a lawsuit challenging that action." U.S. Env't Prot. Agency, Adhering to the Fundamental Principles of Due Process, Rule of Law, and Cooperative Federalism in Consent Decrees and Settlement Agreements 2 (Oct. 16, 2017), https://tinyurl.com/5n83wppk. If an agency instead "resolve[s] that litigation through a consent decree or settlement agreement, . . . questions will necessarily arise about the propriety of the government's determination." *Id*.

1

The Supreme Court, too, has expressed concerns about this practice. In 2022, four justices questioned the current Administration's "circumvent[ion]" of the "usual and important" notice-and-comment requirements," referring to the government's conduct as a "tactic of 'rulemaking-by-collective-acquiescence.'" *Arizona v. City & Cnty. of San Francisco*, 596 U.S. 763, 765-66 (2022) (Roberts, C.J., concurring, joined by Thomas, Alito, & Gorsuch, JJ.) (quoting *City and Cnty. of San Francisco v. USCIS*, 992 F.3d 742, 744 (9th Cir. 2021) (VanDyke, J., dissenting)).

The Amici States' interest in this proceeding is two-fold. First, the Amici States have a strong interest in ensuring that interested States are permitted to intervene when the federal government does not zealously defend federal policies. This practice has been employed for years by States across the political spectrum. *Compare Arizona v. Mayorkas*, 143 S. Ct. 1312, 1313 (2023) (statement of Gorsuch, J.) (observing that several States moved to intervene to defend the federal government's Title 42 immigration orders), *with Texas v. United States*, No. 4:18-cv-167, 2018 WL 10562846, at *1 (N.D. Tex. May 16, 2018) (granting States' motion to intervene to defend aspects of the Affordable Care Act). And continuing this practice is necessary to ensure that federal courts do not

2

"turn[] a deaf federal ear to [State] voices." *Berger v. N. C. State Conf. of the NAACP*, 597 U.S. 179, 191 (2022).

Second, the Amici States have a specific interest in the outcome of this proceeding. States "bear[] many of the consequences of unlawful immigration." *Arizona v. United States*, 567 U.S. 387, 397 (2012). The challenged rule would help deal with the border crisis by creating a presumption that certain illegal immigrants are not eligible for asylum, but it is riddled with exceptions that blunt the rule's effectiveness. As a result, many of the Amici States are currently arguing in a different proceeding that the challenged rule should be *expanded* to exclude many of the exceptions. *See* Complaint at 52, *Indiana v. Mayorkas*, No. 1:23-cv-106 (D.N.D. May 31, 2023), DE1 (seeking vacatur of only the exceptions to the rule). The Plaintiffs here, by contrast, seek essentially the opposite relief. Am. Complaint at 3, 54, *E. Bay Sanctuary Covenant v. Biden*, No. 4:18-cv-06810 (N.D. Cal. May 18, 2023), DE164 (seeking vacatur of the entire rule because it is "a simple [asylum] ban with narrow exceptions"). Because the Intervenor States, unlike the federal government, disclaim any "interest in preserving the exceptions," DE86 at 21, they are well situated to represent the Amici States' interests and prevent a collusive

settlement that would expand those exceptions or otherwise frustrate robust immigration enforcement.

## ARGUMENT

The Intervenor States meet the requirements to intervene in this appeal. They meet the requirements for intervention as of right, and even if this Court disagrees, it should grant permissive intervention.

Because "[n]o statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed," courts consider the "policies underlying" Rule 24, which governs intervention in district court, in deciding whether to permit intervention on appeal. *Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267, 276-77 (2022) (citing Fed. R. Civ. P. 24(a)(2)); *accord UAW v. Scofield*, 382 U.S. 205, 217 n.10 (1965); *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007).

As relevant here, Rule 24(a)(2) governs intervention of right, and it requires courts to allow anyone to intervene where (1) the proposed intervenor "has a significant protectable interest relating to the subject of the action"; (2) "the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest"; (3) "the application is timely"; and (4) "the existing parties may not adequately represent its

interest." *Day*, 505 F.3d at 965 (cleaned up) (quotation omitted). Rule 24(b) governs permissive intervention, and it states that a "court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

## I. The Intervenor States have satisfied the standard for intervention of right on appeal.

This Court construes Rule 24(a)(2)'s requirements "broadly in favor of proposed intervenors" because a "liberal policy" favoring intervention "serves both efficient resolution of issues and broadened access to the courts." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002). The Intervenor States meet all four elements of intervention of right.

### A. The Intervenor States have a significant, protectable interest in ensuring the challenged rule stays in effect.

The Intervenor States have a significant, protectable interest in defending the challenged rule and in having a seat at the table in any settlement negotiations. As the agencies admitted in promulgating the challenged rule, the challenged rule deals with "a significant increase in migrants seeking to enter the United States at the southwest border

following the end of . . . Title 42." DE32 at 1. That rule, among other things, made "certain noncitizens who do not use those expanded lawful pathways (or seek protection in third countries) . . . presumptively ineligible for a grant of asylum." *Id*. at 1-2. It also included, however, various exceptions to that asylum bar. *Id*. at 9-10.

The Intervenor States have an interest in ensuring the challenged rule stays in effect and is used to mitigate illegal immigration. As the Supreme Court has recognized, States "bear[] many of the consequences of unlawful immigration." *Arizona*, 567 U.S. at 397. In fact, because States are separate sovereigns—not mere instrumentalities of the federal government—they suffer a sovereign injury when "unauthorized aliens" are allowed unfettered access to their territory. *Florida v. United States*, 660 F. Supp. 3d 1239, 1264-65 (N.D. Fla. 2023); *see also Arizona*, 567 U.S. at 397 ("The pervasiveness of federal regulation does not diminish the importance of immigration policy to the States.").

The Intervenor States would suffer significant financial injuries were the federal government to enter into a collusive settlement without State participation that blunted the effectiveness of the rule in mitigating the border crisis. *See, e.g.*, *Florida*, 660 F. Supp. 3d at 1263 (discussing

6

financial injuries caused by unchecked illegal immigration); *Texas v. United States*, 787 F.3d 733, 748-50 (5th Cir. 2015) (discussing costs to Texas from unlawfully present aliens), *aff'd*, *United States v. Texas*, 579 U.S. 547 (2016).

**B.    Disposition of this appeal may impair the Intervenor States' interest because the existing parties may not adequately represent their interests.**

Similarly, the Intervenor States have demonstrated that "the disposition of the action may, as a practical matter, impair or impede [their] ability to protect [their] interest[s]." *Day*, 505 F.3d at 965. And for related reasons, they have demonstrated that "the existing parties may not adequately represent [their] interests." *Id.*

The federal government's and plaintiffs' joint motion asked this Court to stay the appeal while they "engaged in discussions regarding the Rule's implementation and whether a settlement could eliminate the need for further litigation." DE83 at 2. That request signaled to the Intervenor States both that the federal government did not plan to zealously defend its policy and that the parties might agree to a collusive settlement that would be difficult to upend or challenge down the line.

7

The Intervenor States have good reason for concern. Consider, for example, recent litigation regarding the federal government's Public Charge Rule, which implemented legislation preventing admission of aliens "likely at any time to become a public charge" (i.e., by collecting public benefits), 8 U.S.C. § 1182(a)(4)(A). In that litigation, the federal government leveraged a consent judgment against it—one that vacated the rule nationwide in separate litigation—as a basis to repeal that rule without following the notice-and-comment procedures of the Administrative Procedure Act ("APA"). *Arizona*, 596 U.S. at 765 (Roberts, C.J., concurring, joined by Thomas, Alito, & Gorsuch, JJ.).

In other words, "the [government] didn't just stop defending the . . . rule and ask the courts to stay the legal challenges while it promulgated a new rule through the ordinary [APA] process." *San Francisco*, 992 F.3d at 743 (VanDyke, J., dissenting). Instead, it colluded with "the various plaintiffs who had challenged the rule in federal courts across the country" and "simultaneously dismissed all the cases challenging the rule . . . , acquiesc[ing] in a single judge's nationwide vacatur of the rule." *Id*. The government then used "that now-unopposed vacatur to immediately remove the rule from the Federal Register . . . and quickly engag[e]

in a cursory rulemaking stating that the federal government was reverting back to the Clinton-era guidance—all without the normal notice and comment typically needed to change rules." *Id.*

In litigation regarding the Title 42 policy—which excluded aliens from entering the United States for public-health reasons—the government engaged in similar gamesmanship. Specifically, after the government sought to repeal the Title 42 policy without notice and comment, several States successfully challenged that action and obtained an injunction keeping the policy in effect. *Arizona*, 143 S. Ct. at 1312-13 (statement of Gorsuch, J.). Rather than seek an expedited appeal or an emergency stay, however, the government waited until a different court vacated the Title 42 policy and then sought to leverage that vacatur to avoid repealing the policy through notice and comment. *Id.* at 1313; Pet. Br., *Arizona v. Mayorkas*, No. 22-592, 2023 WL 363968, at *2 (Jan. 18, 2023). As a result of the government's conduct, several States moved to intervene, arguing that the federal government was "not defend[ing] the Title 42 orders as vigorously as they might." *Arizona v. Mayorkas*, 143 S. Ct. 478, 478 (2022) (Gorsuch, J., dissenting from grant of stay, joined by Jackson, J.). The Supreme Court apparently agreed, as it granted the

States an emergency stay keeping the Title 42 policy in effect. *Arizona*, 143 S. Ct. 478 (mem.).

The federal government's pattern of "collude-and-circumvent tactic[s]" to "replace disfavored rules" suggests that it might be playing the same games here. *San Francisco*, 992 F.3d at 750, 752 (VanDyke, J., dissenting). And that satisfies the Intervenor States' minimal burden to show that the existing parties *may* not adequately represent their interests. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (explaining that the adequate-representation "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate," and the burden to make that showing is "minimal"). By abandoning its interests in favor of Plaintiffs', the federal government would neither "undoubtedly make all of [the Intervenor States'] arguments" nor be "willing to make [their] arguments." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

## C.    The Intervenor States' motion to intervene is timely.

As to timeliness, the Intervenor States moved to intervene 14 days after this Court granted the parties' joint motion to stay this appeal pending settlement negotiations. DE85-1; DE86. The Supreme Court has

10

explained that while "[t]imeliness is an important consideration in deciding whether intervention should be allowed," it "is to be determined from all the circumstances, and the point to which [a] suit has progressed is . . . not solely dispositive." *Cameron*, 595 U.S. at 279. In *Cameron*, "the most important circumstance relating to timeliness [was] that the attorney general sought to intervene as soon as it became clear that [the state's] interests would no longer be protected by the parties in the case." *Id*. at 279-80. So too here, the States moved to intervene expeditiously once it became clear that the federal government "s[ought] to abandon its defense of the rule—or at least put that defense on ice until a more politically convenient time." DE85-1 at 15 (VanDyke, J., dissenting).

It is of no moment that this case has already been briefed and argued, as this Court has permitted a State to intervene to vindicate its rights even after a panel has issued a decision on the merits. In *Day*, this Court permitted Hawaii to intervene to petition for panel rehearing and rehearing en banc when no current party would, even though Hawaii could have intervened sooner. 505 F.3d at 964-66. Applying Rule 24(a)(2), the Court considered "all the circumstances of [the] case" to "ascertain[ ]" timeliness and, because Hawaii's intervention would not "broaden the

11

scope of the case going forward" or result in prejudice to the appellants, it permitted Hawaii to intervene to "ensure that [the panel's] determination of an already existing issue is not insulated from review simply due to the posture of the [existing] parties." *Id*. at 965-66; *accord Peruta v. Cnty. of San Diego*, 824 F.3d 919, 940 (9th Cir. 2016) (en banc).

Like in *Day* and *Peruta*, permitting the States to intervene will not prejudice any party by injecting new issues into the litigation. DE86 at 22. Instead, it will permit the States "to fill the void created by" the federal government's effective departure from the litigation, *Peruta*, 824 F.3d at 941, and protect their interests through preserving the rule.

Because the States have met all the elements for intervention as of right under Rule 24(a)(2), this Court should grant their motion.

## II. If the Court denies intervention of right, it should grant permissive intervention.

Even if the Court disagrees that the Intervenor States have met all four intervention-of-right elements, it should grant permissive intervention under Rule 24(b)(1)(B).

"On timely motion, the court may permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "[P]ermissive intervention

12

requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). This test's jurisdictional requirement serves to prevent the inappropriate enlargement of jurisdiction, which is not a concern (and does not apply) in federal-question cases where proposed intervenors bring no new claims. *Id*. at 843-44. Because the Intervenor States assert no new claims, DE86 at 22, their defense or claim must only share a common question of law or fact with the main action. The Intervenor States seek to protect their own sovereign interests by ensuring the challenged rule stays in effect and is used to mitigate illegal immigration—a defense that undeniably shares a common question of law and fact with the main action. This Court should grant their motion and allow them to permissively intervene, if it denies intervention of right.

## CONCLUSION

The Court should grant the States' motion to intervene.

Dated: March 18, 2024      Respectfully submitted,

ASHLEY MOODY
*Attorney General of Florida*

/s/ Henry C. Whitaker

HENRY C. WHITAKER
  *Solicitor General*
JAMES H. PERCIVAL
  *Chief of Staff*
BRIDGET K. O'HICKEY
  *Assistant Solicitor General*

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
*henry.whitaker@myfloridalegal.com*

*Counsel for Amicus Curiae State of Florida*

*Amici Curiae*

Tim Griffin
Attorney General of Arkansas

Theodore E. Rokita
Attorney General of Indiana

Brenna Bird
Attorney General of Iowa

Russell Coleman
Attorney General of Kentucky

Lynn Fitch
Attorney General of Mississippi

Andrew Bailey
Attorney General of Missouri

Austin Knudsen
Attorney General of Montana

Mike Hilgers
Attorney General of Nebraska

John Formella
Attorney General of New Hampshire

Drew Wrigley
Attorney General of North Dakota

Dave Yost
Attorney General of Ohio

Alan Wilson
Attorney General of South Carolina

Marty Jackley
Attorney General of South Dakota

Ken Paxton
Attorney General of Texas

Sean Reyes
Attorney General of Utah

Jason Miyares
Attorney General of Virginia

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limits of Federal Rule of Appellate Procedure 29(a)(5)[1] because this document contains 2579 words.

2.    This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Henry C. Whitaker*
Solicitor General

---

[1] Florida construes the word limit to be half the length permitted for the Intervenor States' motion to intervene. *See* Fed. R. App. P. 27(d)(2)(A).

## CERTIFICATE OF SERVICE

I certify that on March 18, 2024, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Henry C. Whitaker*
Solicitor General