23-16032

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

EAST BAY SANCTUARY COVENANT, et al.,
Plaintiffs-Appellees
v.
JOSEPH BIDEN, et al.,
Defendants-Appellants
v.
ALABAMA, et al.,
Proposed Intervenor-Defendants.

ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
Case No. 4:18-cv-06810-JST

**CONSOLIDATED REPLY IN SUPPORT OF
MOTION TO INTERVENE BY THE STATES OF
ALABAMA, KANSAS, GEORGIA,
LOUISIANA, AND WEST VIRGINIA**

STEVE MARSHALL
ALABAMA ATTORNEY GENERAL

KRIS W. KOBACH
KANSAS ATTORNEY GENERAL

EDMUND G. LACOUR, JR.
*SOLICITOR GENERAL OF ALABAMA*
OFFICE OF THE ATTORNEY GENERAL
501 Washington Ave.
Montgomery, AL 36130
(334) 242-7300
Edmund.LaCour@AlabamaAG.gov

ANTHONY J. POWELL
*SOLICITOR GENERAL OF KANSAS*
ABHISHEK KAMBLI
*DEPUTY ATTORNEY GENERAL*
OFFICE OF THE ATTORNEY GENERAL
120 SW 10th Ave.
Topeka, KS 66612
785-296-2215
Anthony.Powell@ag.ks.gov
Abhishek.Kambli@ag.ks.gov

April 12, 2024

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 1

    I.  The States Have a Right to Intervene ................................................ 2

   A.  The motion is timely ......................................................................... 2

   B.  The States' interests would be impaired if Appellees prevail ......................... 5

   C.  Defendants do not adequately represent the States' interests ......................... 8

   II.  The States Should Be Allowed to Intervene Permissively ............................ 10

CONCLUSION ............................................................................................... 10

Certificate of Compliance ............................................................................. 12

Certificate of Service ..................................................................................... 13

## **TABLE OF AUTHORITIES**

*Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312

  (D.C. Cir. 2015) ......................................................................................... 8

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 2021) ................................. 7

*E. Bay Sanctuary Covenant v. Biden*, No. 23-16032, 2024 WL 725502 (9th Cir.

  Feb. 21, 2024) ........................................................................................... 9

*Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816 (9th Cir. 2021) ................... 4

*Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433 (2017) ............ 6

*United States v. Texas*, 599 U.S. 670 (2023) ......................................... 6, 7

*United States v. Washington*, 86 F.3d 1499 (9th Cir. 1996) .......................................3

*Western Watershed Project v. Halaand*, 22 F.4th 828 (9th Cir. 2022) ...................1, 5

**INTRODUCTION**

The States of Alabama, Kansas, Georgia, Louisiana, and West Virginia (the "States") file this consolidated reply brief in support of their motion to intervene. Both parties invent a standard for intervention that is detached from the law. If their standard were accepted it would be virtually impossible for anyone to intervene without following an artificially convoluted test. Thankfully, the law is otherwise. "Although the applicant seeking intervention bears the burden of showing that these four elements are met, we interpret these requirements broadly in favor of intervention." *Western Watershed Project v. Halaand*, 22 F.4th 828, 835 (9th Cir. 2022) (internal citation omitted). In addition, the review is guided by practical considerations and not technical distinctions. *Id.* (internal quotation omitted).

Appellants and Appellees' arguments to the contrary fail. They miss three overarching principles: (1) the States are intervening as *defendants* who are not making a separate crossclaim, which negates the need for standing; (2) the States are intervening to uphold an Administrative Procedures Act rule that has benefited them; and (3) until very recently, the States had no reason to suspect the federal government would stop defending *its own rule* and engage in settlement negotiations for this and "related policies." Under the actual standards for intervention, it is not even a close call as to whether the States should be allowed to intervene.

**ARGUMENT**

The States satisfy Rule 24's requirements for intervention as of right and for permissive intervention. They should be allowed to intervene in this matter.

## I.  The States Have a Right to Intervene

### A.  The motion is timely

Appellants do not contend that the States' intervention was untimely.  The Court should treat that as a concession.  Only Appellees challenge the timeliness of the intervention.  They contend that the States were on "constructive notice" that their interests might not be adequately represented by Appellants because the States have had a contentious relationship with Appellants on the issue of immigration for years.  Because of that, Appellees claim the States should have intervened in the district court level (while Appellants were actively defending the Rule).  This argument has no merit for three reasons: (1) inadequacy of representation is not triggered solely by an overall disagreement between parties on a general issue but has to be demonstrated in the particular case; (2) until recently the States had ample reason to believe Appellants were representing their interest in this particular case; and (3) intervention prior to the settlement negotiations would have been hasty and premature.

Appellees rely on *United States v. Washington*, 86 F.3d 1499 (9th Cir. 1996) for the proposition that the years-long "hostility" between the States and Appellants put the States on "constructive notice" from the onset of the case that their interests

might not be adequately represented. Aple. Resp. 11. They claim the States were aware since the beginning of the Biden Administration that Appellants were generally hostile to their interests in the broad context of immigration. *Id.* Appellees neglect to mention that all the "hostility" at issue in *Washington* was particular to the very litigation, had occurred over the course of that particular litigation, and had been going on for years prior to the intervention. *See* 86 F.3d at 1503-04. It was not a general hostility concerning a broad issue or policy.

Appellees argue that the States were untimely because its "motion, and their previous statements that they have repeatedly disagreed with the Government's immigration and border policies-and with its litigation decisions concerning such policies—since the start of the current administration more than three years ago." Aple. Resp. 4. This is absurd. If the Court were to follow this line of thinking, any party that has some general policy disagreement with another party must intervene at the earliest possible point (even before such hostility manifests in the particular case) or else waive the right to do so in the future. That cannot possibly be what Rule 24 requires; the "hostility" must be related to the particular case.

Turning to the facts this case, until recently the States had ample reason to believe that Appellants were adequately representing their interest as it pertains to this particular Rule. Simply put, this is was Appellants' *own* rule. Self-interest alone dictates that if the administration promulgates a rule, it will defend that rule in court.

And up until early February, Appellants were vigorously defending the Rule. Then, out of nowhere, they stopped defending it to negotiate a settlement for the Rule itself and (as noted in *M.A. v. Mayorkas*[1]) "related policies." There was simply no way the States could have known that Appellants would stop defending their own Rule and negotiate a settlement that covered it and related policies until they did. That is not something that ordinarily happens in litigation. Once the States found this out, they acted promptly to intervene.

Appellees' proposed-rule also invites the Court to allow (if not require) hasty and premature interventions when parties have a disagreement on matters outside of the particular litigation. This goes against this Court's precedent. Although timeliness is necessary, courts "'discourage premature intervention' that unnecessarily 'squander[s] scare judicial resource[s]and increases litigation costs.'" *Kalbers v. U.S. Dep't of Justice*, 22 F.4th 816, 823 (9th Cir. 2021) (quoting *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376–77 (5th Cir. 2001)). The States could not have intervened until the time they did. Otherwise, the Court would (rightly) conclude the intervention was hasty and premature because Appellants were, until that point, arguably adequately representing their interests. The States acted quickly when the parties stayed the proceedings to negotiate settlement. The motion to is timely.

---

[1]Joint Stipulation to Hold Case in Abeyance, *M.A., et al. v. Mayorkas, et al.*, No. 1:23-cv-01843-TSC (D.D.C. Sept. 8, 2023).

4

**B.      The States' interests would be impaired if Appellees prevail**

In an attempt to construct an artificial wall against the States' intervention, Appellants and Appellees create an impossibly high threshold for determining when someone has an interest requiring intervention.  Appellants go as far as to argue (without authority) that an interest for the purpose of intervention is somehow a higher burden than for Article III standing.  These exacting, legalistic tests do not exist in this Court, as it has held that intervention requirements are interpreted "broadly in favor of intervention" and that "review is guided by practical considerations, not technical distinctions."  *Haaland*, 22 F.4th at 834.

In order to cut through Appellee and Appellants mischaracterizations, there are couple points worth highlighting.   First, the States are *not* required to demonstrate Article III standing.  Appellees bury this inconvenient fact in a footnote (while Appellants don't acknowledge it at all).  Standing is not required when, as here, the States are intervening in an existing case as defendants and are not making a crossclaim.[2]  In *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017), the Court did not take the position that standing is required for all proposed intervenors.   Instead, it stated that an "intervenor of right must have Article

---

[2] Both Appellees and Appellants try to argue that the States are seeking broader relief because the States are not interested in preserving aspects of the rules that do not benefit them.  This is incorrect.  While the States have no interest in defending aspects of the challenged rule that do not reduce illegal immigration, that does not mean they are seeking broader relief.

III standing in order to pursue relief that is *different* from that which is sought by a party with standing." *Id.* (emphasis added). Here, the States are not pursuing any claim that is any different from what Appellants pursued at the outset, to uphold the Rule. Neither the Supreme Court nor this Court have required standing in this type of intervention.

Second, this is an APA case. Appellees and Appellants rely heavily on *United States v. Texas*, 599 U.S. 670 (2023) to argue against intervention. That case addressed the issue of when a state has Article III standing to *challenge* federal immigration policy. *Id.* at 683. Here the States are not plaintiffs; they are intervenor-defendants and do not require standing. Regardless, *Texas* has no bearing on this case. *Texas* involved the narrow issue the Executive Branch's enforcement discretion over arrests and prosecutions of illegal immigrants. *Id.* at 679. The states asked the federal government to change its discretion to deport more illegal aliens. That is not remotely the situation in this case. This case is challenge to an agency rule brought under the APA. The executive's duties under the APA are wholly different from any prosecutorial discretion. Finally, if the holding of *Texas* is as broad as both parties claim, then this case should be dismissed because Appellees do not have standing. Appellees are all organizational plaintiffs who themselves are "neither prosecuted nor threatened with prosecution." *Id.* at 673. If *Texas* applies so broadly as to prohibit anyone from challenging an APA rule on immigration unless

they are the target of the prosecution, Appellees have no standing to challenge it. The States presume that the existing parties are not unwittingly asking the court to dismiss this case for lack of standing while also engaged in settlement negotiations. Therefore, the conclusion must be that *Texas* is not all encompassing.

This leads to the most salient point of how the States have a significant protectable interest in this matter. A significant protectable interest must be one that is protected under some law and there is a "relationship" between its legally protected interest and the plaintiff's claim. *See Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 2021). The D.C. Circuit has addressed what this looks like in an APA context for would-be intervenor-defendants. In short, if a would-be intervenor-defendant receives a benefit from an agency rule that would be impaired if the plaintiffs were to prevail, that would be sufficient and the intervenor-defendant may intervene. *See Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015) ("Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit."). The States have more than demonstrated they have received benefits through the Rule in the following ways: (1) fewer expenditures on services they *must* provide asylum seekers, (2) reduced administrative burden on screening asylum seekers who cannot be given certain benefits under state and federal law, and (3) protecting political

7

representation and federal funding. All are interests protecting by some law that have a "relationship" to Appellees' claims.

All of these significantly protectable interests would be impaired if Appellees prevail. Both existing parties argue that impairment should be measured through the outcome of settlement negotiations. That is incorrect because as both sides note, it remains to be seen whether one will even materialize. If States were permitted to intervene they intend to remain a party if settlement fails. Impairment should be viewed through the lens of whether Appellees will prevail and whether that would impair a would-be Intervenors interest. In this case, the States would certainly have the interests noted above impaired if Appellees successfully vacated a Rule they receive some benefit from.

### C.  Defendants do not adequately represent the States' interests

In trying to argue that Appellants adequately represent the States' interests, both parties pretend that they are litigating a different case than the one they currently are. They also ignore the admonition of one judge on the case who stated that Appellants were snatching defeat from the jaws of a likely victory. *E. Bay Sanctuary Covenant v. Biden*, No. 23-16032, 2024 WL 725502, at *3 (9th Cir. Feb. 21, 2024). In doing so they ignore the entire reason the States moved to intervene.

The burden to demonstrate in adequacy of representation is minimal and satisfied if the opposing party "may" not adequately represent the States' interest.

The aspects of the Rule that are challenged in this case are entirely lawful and Appellants are likely to prevail on it (as evidenced by receiving a stay where likelihood of success on the merits is an important factor). There was no legal reason to enter settlement negotiations. And any settlement negotiations would almost certainly require sacrificing aspects of the Rule that place limits on asylum seekers or else Appellees would receive no benefit. By taking such a posture, the States met their minimal burden of demonstrating inadequacy of representation.

But there is more. Appellants have taken a troubling approach of going against their own internal policies in order to push for a settlement in this arguably winnable case. Just two weeks ago, the Solicitor General of the United States told the Supreme Court about the concerns Appellants have about lower courts expanding broad theories of standing in the immigration context for organizational plaintiffs who assert that they must divert resources to address government policy they oppose. Transcript of Oral Argument, *FDA, et al. v. Alliance for Hippocratic Medicine, et al.*, No. 23-235, at 19–21 (argued Mar. 26, 2024) (attached as Ex. 1). This posture would necessitate vigorous litigation on standing in a case such as this involving organizational plaintiffs challenging an immigration rule. Instead, Appellants are implicitly conceding standing by entering settlement negotiations in this case. This not only suggests a possible "sue and settle" is brewing but that they will no longer adequately represent the States' interests.

Finally, Appellants' own response demonstrates its interests are not the same as the States' interests. They repeat multiple times that they will adequately represent the interests of the "United States" rather than the specific States that are intervening. This is problematic. First, states are not instrumentalities of the United States; they are their own sovereigns. Second, the interests of individual states do not always align with those of the United States as a whole. As an example, there are multiple states that have sanctuary cities who may want more asylum seekers to reside there (even if they are not later granted asylum). And some states might want more illegal aliens to reside in their territory since that increases their political representation and federal funding. Appellants have not even claimed they will protect the specific interests of the States. That also satisfies the minimal burden of inadequate representation. The States meet the standards under Rule 24.

## II.     The States Should Be Allowed to Intervene Permissively.

Even if the proposed intervenors do not have a *right* to enter this case, the Court can allow the intervention if it is timely and the intervenor's claim or defense "shares with the main action a common question." The States have met these requirements and the court should give no weight to the parties' counterarguments.

## <u>CONCLUSION</u>

For these reasons, the Court should grant the States' motion to intervene.

10

Respectfully submitted,

Kris W. Kobach
Attorney General of Kansas

/s/ Abhishek S. Kambli
Abhishek S. Kambli
*Deputy Attorney General*
120 SW 10th Ave.
Topeka, KS 66612
(785) 696-6109
Abhishek.kambli@ag.ks.gov

DATED: April 12, 2024          *Counsel for Proposed Intervenor-Defendants*

11

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Certificate of Compliance

**9th Cir. Case Number(s)** 23-16032

    I am the attorney or self-represented party.

    **This brief contains** 2,456 **words,** including 0 words manually

counted in any visual images, and excluding the items exempted by FRAP 32(f).

The brief's type size and typeface comply with FRAP 27(d)(1)(E) and FRAP

32(a)(5) and (6).

    I certify that this brief complies with the word limit of FRAP 27(d)(2)(A).

    **Signature** s/ Abhishek S. Kambli **Date** April 12, 2024.

## **Certificate of Service**

I certify that on April 12, 2024, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all attorneys in this case.

*/s/ Abhishek S. Kambli*
Abhishek S. Kambli

# SUPREME COURT
# OF THE UNITED STATES

IN THE SUPREME COURT OF THE UNITED STATES

- - - - - - - - - - - - - - - - - -

FOOD AND DRUG ADMINISTRATION,    )

ET AL.,    )

       Petitioners,    )

       v.    ) No. 23-235

ALLIANCE FOR HIPPOCRATIC MEDICINE, )

ET AL.,    )

       Respondents.    )

- - - - - - - - - - - - - - - - - -

DANCO LABORATORIES, L.L.C.,    )

       Petitioner,    )

       v.    ) No. 23-236

ALLIANCE FOR HIPPOCRATIC MEDICINE, )

ET AL.,    )

       Respondents.    )

- - - - - - - - - - - - - - - - - -

Pages: 1 through 103

Place: Washington, D.C.

Date: March 26, 2024

**HERITAGE REPORTING CORPORATION**

*Official Reporters*

1220 L Street, N.W., Suite 206

Washington, D.C. 20005

(202) 628-4888

www.hrccourtreporters.com

Official - Subject to Final Review

1

1      IN THE SUPREME COURT OF THE UNITED STATES

2    - - - - - - - - - - - - - - - - - -

3    FOOD AND DRUG ADMINISTRATION,      )

4    ET AL.,                            )

5                    Petitioners,       )

6            v.                   ) No. 23-235

7    ALLIANCE FOR HIPPOCRATIC MEDICINE, )

8    ET AL.,                            )

9                    Respondents.       )

10    - - - - - - - - - - - - - - - - - -

11    DANCO LABORATORIES, L.L.C.,        )

12                    Petitioner,        )

13            v.                   ) No. 23-236

14    ALLIANCE FOR HIPPOCRATIC MEDICINE, )

15    ET AL.,                            )

16                    Respondents.       )

17    - - - - - - - - - - - - - - - - - -

18

19                    Washington, D.C.

20                 Tuesday, March 26, 2024

21

22          The above-entitled matter came on for

23    oral argument before the Supreme Court of the

24    United States at 10:04 a.m.

25

1

1       IN THE SUPREME COURT OF THE UNITED STATES

2    - - - - - - - - - - - - - - - - - -

3    FOOD AND DRUG ADMINISTRATION,      )

4    ET AL.,                           )

5                    Petitioners,      )

6             v.                  ) No. 23-235

7    ALLIANCE FOR HIPPOCRATIC MEDICINE, )

8    ET AL.,                           )

9                    Respondents.       )

10   - - - - - - - - - - - - - - - - - -

11   DANCO LABORATORIES, L.L.C.,        )

12                    Petitioner,      )

13             v.               )  No. 23-236

14   ALLIANCE FOR HIPPOCRATIC MEDICINE, )

15   ET AL.,                           )

16                    Respondents.       )

17   - - - - - - - - - - - - - - - - - -

18

19                    Washington, D.C.

20              Tuesday, March 26, 2024

21

22        The above-entitled matter came on for

23   oral argument before the Supreme Court of the

24   United States at 10:04 a.m.

25

Official - Subject to Final Review

2

```
1    APPEARANCES:

2    GEN. ELIZABETH B. PRELOGAR, Solicitor General,

3         Department of Justice, Washington, D.C.; on behalf

4         of the Federal Petitioners.

5    JESSICA L. ELLSWORTH, ESQUIRE, Washington, D.C.; on

6         behalf of Petitioner Danco Laboratories, L.L.C.

7    ERIN M. HAWLEY, ESQUIRE, Washington, D.C.; on behalf

8         of the Respondents.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Official - Subject to Final Review

3

```
 1                 C O N T E N T S

 2   ORAL ARGUMENT OF:                       PAGE:

 3   GEN. ELIZABETH B. PRELOGAR, ESQ.

 4        On behalf of the Federal Petitioners      4

 5   ORAL ARGUMENT OF:

 6   JESSICA L. ELLSWORTH, ESQ.

 7        On behalf of Petitioner Danco

 8        Laboratories, L.L.C.                       46

 9   ORAL ARGUMENT OF:

10   ERIN M. HAWLEY, ESQ.

11        On behalf of the Respondents              60

12   REBUTTAL ARGUMENT OF:

13   GEN. ELIZABETH B. PRELOGAR, ESQ.

14        On behalf of the Federal Petitioners    100

15

16

17

18

19

20

21

22

23

24

25
```

```
 1           And in the government's experience
 2    enforcing EMTALA -- this is almost four decades
 3    of experience -- we are not aware of any
 4    situation where there has been that kind of
 5    direct conflict between EMTALA and conscience
 6    protections.
 7           JUSTICE BARRETT:  Okay.  Just one last
 8    question.  This is about the association's
 9    standing, so its own standing in its own right
10    I'm talking about, not its standing that based
11    -- is based on injury to one of its members.
12           So the injuries that the association
13    is arguing sound in the Havens Realty
14    associational standing, and they're the kinds of
15    allegations we see by immigration advocacy
16    groups, diversion of resources, increased
17    expenses that result from the complications of
18    having to address and explain the new changes.
19           And I'm not talking about the expenses
20    of filing the petition.  That's not what I'm
21    talking about.  Let's just talk about the
22    diversion of resources.
23           Can you distinguish that from Havens
24    Realty?
25           GENERAL PRELOGAR:  Yes.  So I think
```

Official Subject to Final Review

1  Havens itself was trying to distinguish between

2  two types of potential organizational injuries,

3  and what Havens said is that in that case, the

4  organization had come forward with direct and

5  concrete demonstrable injury to itself.

6      And there the organization had a

7  contract to provide low-income housing or -- or

8  search to secure it for clients and the racial

9  steering practices directly interfered with

10  that, made it more difficult for the

11  organization to carry out its contractual

12  obligations.

13      But Havens itself said that it was not

14  blessing a theory of standing that would allow

15  an organization to assert a setback to its

16  abstract social interests.  So I think that

17  reflects the Court trying to distinguish between

18  more concrete, direct demonstrable harms on the

19  one hand and that kind of abstract setback on

20  the other hand.

21      And I recognize -- and you -- your

22  question touches on it, Justice Barrett -- that

23  some lower courts in particular have seemed to

24  red -- read Havens to -- to endorse far broader

25  theories of standing, including in the

1    immigration context.

2              The government has been routinely

3    resisting standing because we think that that

4    would essentially mean that any advocacy

5    organization could say it opposes what the

6    federal government is doing and so, therefore,

7    has to devote resources to that opposition.

8              If that were enough, then every

9    organization would have standing and it would be

10   a vast expansion of ordinary Article III

11   principles.  So we would welcome an eventual

12   clarification from this Court on organizational

13   standing, but, here, I think that the

14   organization's assertion of injury falls in the

15   bucket of the abstract setback and doesn't come

16   close to the kind of demonstrable harm that was

17   at issue in Havens.

18             JUSTICE GORSUCH:  General, that's --

19   I'm sorry.

20             JUSTICE BARRETT:  I'm done.

21             JUSTICE GORSUCH:  Okay.  That -- that

22   -- that's a helpful clarification.  I -- I'd

23   like a similar clarification -- thank you --

24   with respect to individuals.

25             I -- I -- I've heard and listened to