CASE NO. 23-16032

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

◆

EAST BAY SANCTUARY COVENANT, et al.,
*Plaintiffs-Appellees*,
v.
JOSPEH BIDEN, et al.,
*Defendants-Appellants,*
v.
NIKOLAI BELOV,
*Proposed Intervenor-Plaintiff.*

◆

On Appeal from the United States District Court
for the Northern District of California
Case No. 4:18-cv-06810-JST

## MOTION TO INTERVENE BY THE NIKOLAI BELOV

NIKOLAI BELOV
ST. MOSKOVSKAYA, 89/8
APT. 127
ASTRAKHAN, ASTRAKHAN REGION
414056
RUSSIA
+7 968 078-90-68
belov.nikolai.nikolaevich@gmail.com

June 17, 2024

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...................................................................... 1

TABLE OF AUTHORITIES.................................................................. 2

INTRODUCTION ............................................................................... 4

BACKGROUND ................................................................................. 5

STANDARDS ....................................................................................11

ARGUMENT......................................................................................12

    I.    Intervention as of Right ........................................................13

        A.    The Motion is Timely ....................................................13

        B.    Interests of Millions of Asylum Seekers Would be Impaired if Defendants Prevail ...........................................................16

        C.    The Plaintiffs Do Not Adequately Represent My Interests…………18

    II.    I Should Be Allowed to Intervene Permissively .......................................19

    III.    This Court's experience with a similar motion by the States to intervene in this case………………………………………………………………...20

CONCLUSION .................................................................................21

CERTIFICATE OF COMPLIANCE…..…………..……….....................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Freedom from Religion Found., Inc. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011) .......................................................... 20

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Scofield*,
  382 U.S. 205 (1965)........................................................................12

*Kalbers v. U.S. Dep't of Just.*,
  22 F.4th 816 (9th Cir. 2021) ..........................................................14

*League of United Latin Am. Citizens v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997).........................................................18

*Legal Aid Soc. of Alameda Co. v. Dunlop*,
  618 F.2d 48 (9th Cir. 1980)............................................................15

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983) ..............................................…...18, 19

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ..........................................................13

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ..........................................................12

*Wilderness Soc. v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ..................................................12, 21

**Rules**

Fed. R. Civ. P. 24 ......................................................................11, 12

Fed. R. Civ. P. 24(a)(2) ...................................................................12

Fed. R. Civ. P. 24(b)...................................................................…..19

Fed. R. Civ. P. 24(b)(1)(B) ..................................................... …...12

**Regulations**

8 C.F.R.§208.33(a)(2) ........................................................ 8

88 Fed. Reg. 31314 ................................................................8, 16

89 Fed. Reg. 6194……………………………………………………17

**Other Authorities**

*A statistics from the official website of the U.S. Customs and Border Protection,*
    https://www.cbp.gov/newsroom/stats/nationwide-encounters............................5

*The Blue Lightning Initiative (BLI), led by the U.S. Department of Transportation
    and U.S. Customs and Border Protection,* https://www.dhs.gov/blue-
    campaign/blue-lightning-initiative.......................................7

*The official website of the U.S. Customs and Border Protection - CBP One™,*
    https://www.cbp.gov/about/mobile-apps-directory/cbpone................................8

*My comment to the Rule «Circumvention of Lawful Pathways» (comment ID
    USCIS-2022-0016-51963), posted June 12, 2023 on the official government
    website www.regulations.gov,* https://www.regulations.gov/comment/USCIS-
    2022-0016-51963.........................................................8, 10

*The official websites of the Plaintiffs contain long-outdated information about this
    case,* https://eastbaysanctuary.org/protect-asylum/.............................13

*The official website of this Court states that "As of March 1, 2024, we are no
    longer providing a "cases of interest" page on this site.",*
    https://www.ca9.uscourts.gov/...........................................13

*A Supporting Statement for Paperwork Reduction Act Submission "Welcome Corps
    Application 1405-0256",* https://omb.report/icr/202309-1405-
    003/doc/135744100........................................................16

*The Secretary of State has recently announced a visa restriction policy that targets
    owners, executives, and senior officials of companies providing transportation
    by land, sea, or charter air designed to the U.S. southwest border,*
    https://www.state.gov/new-visa-restriction-policy-for-transportation-operators-
    facilitating-irregular-migration-to-the-united-states/.........................18

## INTRODUCTION

I, Nikolai Belov, respectfully move this Court to grant my intervention in this action as of right or in the alternative, intervene permissively. I have no alternativemeans to protect my interests and to obtain relief. Specifically, I seek intervention (1) to participate in settlement negotiations and make proposals for settlement, and (2) to move this Court, if necessary, to lift the abeyance and resume its expedited consideration.

On January 29, 2024, I asked this Court by email: «When case № 23-16032 would finally be decided?», this Court replied me by email: «I can take around 9 months.», on February 1, 2024, I forwarded this reply to the ACLU as one of the Plaintiffs in this case by email and on February 5, 2024 (February 2 was Friday, and February 3 and 4 were Saturday and Sunday - weekends, respectively), the parties jointly asked to hold off making a decision for "discussions", which actually don't exist, because the only purpose of these "discussions" - drag out this lawsuit before the presidential elections in November 5, 2024, so as not to damage the rating of the current president, and neither party really cares about the fate of millions of asylum seekers, including my fate as one of this millions of asylum seekers.

April 22, 2024, the parties filed their first joint status report to this Court (as required by Court order dated 02/21/2024), consisting of only a few sentences the following content: «Counsel for the government and counsel for plaintiffs have

4

been engaged in discussions … Those discussions remain ongoing, and the parties agree that proceedings should remain stayed to facilitate those continuing discussions». That is «discussions remain ongoing and we (parties) need more 60 days», then «more 60 days», then «more 60 days», and so on until the presidential elections in November 5, 2024. Wherein in their first joint status report parties do not indicate in any way what exactly happened on these "discussions", what concretely proposals to change the contested Rule were made by the Plaintiffs, how the Defendants responded to these proposals, etc.

That's why, I cannot no longer rely on East Bay Sanctuary Covenant, et al., ("Plaintiffs") to defend and enforce my rights as asylum seeker. Consequently, I are forced to intervene where Plaintiffs appear unlikely to mount a vigorous defense of my rights as asylum seeker, and this Court should grant the motion and permit me as one of millions of asylum seekers to defend not just mine weighty interests, but at the same time weighty interests of millions of asylum seekers in this case.

## BACKGROUND

Given this Court's familiarity with the background of the case, I will not belabor it here. But several factual and legal points are salient to the Court's consideration of the instant motion.

**A. Facts.** Migration to the United States from Eastern Hemisphere countries increased dramatically during the Title 42 period. According to statistics from the official website of the U.S. Customs and Border Protection for the first six months

of fiscal year 2023 compared to the same period in fiscal year 2021, the number of meetings with asylum seekers from Turkey increased by 10 599 percent (from 85 to 9 094); from Russia by 7 729 percent (389 against 30 455); from China by 7 122 percent (from 92 to 6 644); and from India by 3 365 percent (from 502 to 17 392).

All these asylum seekers from Turkey, Russia, China, India and other countries seeking asylum in the United States had access to air travel, but due to the restrictions (refusal to board a plane without a U.S. visa, maintenance of covid restrictions for immigrant air passengers, etc.) instead of coming directly to the United States on commercial air flights, they were forced to first fly to Mexico and then try to enter the United States through the southwestern land border, which led to a surge in migration at the southwestern land border, overcrowding of border facilities located there, and made these asylum seekers from Turkey, Russia, China, India and other countries dependent on smugglers and human traffickers.

The crisis on the southwestern land border, in turn, led to the fact that those asylum seekers from Turkey, Russia, China, India and many other countries who could not get to the United States through the southwestern land border, began to massively try to get to the United States by sea, which significantly increased the growth rate of maritime migration and created a direct threat to the lives and

health of these asylum seekers, who were often transported by smugglers and traffickers on overcrowded old wooden sailing ships without security equipment.

As a result, numerous asylum seekers from Turkey, Russia, China, India and many other Eastern Hemisphere countries, instead of international airports in the United States, where they wanted to legally, safely and in an orderly manner arrive by commercial air flights, found themselves in the desert on the southwestern land border under a scorching sun without water or in the open sea during a storm on an overturned wooden sailing ship like in the time of Christopher Columbus. But we are now living not in the 15th, but in the 21st century!

In the 21st century, international passenger air transportation is the most modern, safe and state-controlled mode of transportation. This type of transportation completely excludes smuggling and human trafficking. The Blue Lightning Initiative (BLI), led by the U.S. Department of Transportation and U.S. Customs and Border Protection, has trained more than 350 000 international airport employees in the United States to identify potential smugglers and traffickers and victims of human smuggling and trafficking and report their suspicions to federal law enforcement agencies.

**B. The Rule.** To combat the growing crisis and forestall a worse one after the end of Title 42, DHS and DOJ issued the "Circumvention of Lawful Pathways" rule

7

on May 16, 2023. *See* 88 Fed. Reg. 31314.

The Rule provides that an asylum seeker can schedule an appointment to cross at a port of entry with the CPB One smartphone app. *Id.* §208.33(a)(2).

But according to the official website of the U.S. Customs and Border Protection, using the CBP One app, pre-planning the arrival of asylum seekers is only possible at land ports of entry below the southwestern border. It is not possible to pre-schedule the arrival of asylum seekers at any other ports of entry, including international airports, using the CBP One app. At the same time, the port of entry (POE) is the place where you can legally enter the country. International airports are usually ports of entry, as are road and rail crossings at land borders, as well as major seaports.

In my comment to the Rule «Circumvention of Lawful Pathways» (comment ID USCIS-2022-0016-51963), posted June 12, 2023 on the official government website www.regulations.gov, I indicated that the only way out of crisis on the southwestern land border will be to remove all covid and other restrictions that apply to immigrant air passengers and add international airports within the United States to the CBP One app as ports of entry. The above measures will allow all asylum seekers, including those from Eastern Hemisphere countries, to travel directly to the United States by air through the CBP One app, without having to travel through Central America, where they may become victims of

people smugglers and traffickers, or die in the desert or on the high seas.

The above measures to ensure that thousands of asylum seekers from around the world do not fly into Mexico and become victims of cartels and human traffickers, wandering the desert with their smartphones, searching for a geolocation to sign up through CBP One™ at one of the eight land ports of entry on the southwest border, but could, while in their home countries, sign up through CBP One™ to arrive at U.S. airports on commercial air flights by entering in CBP One™ information about the air tickets they have booked.

This approach will not only significantly reduce the number of asylum seekers from around the world at the southwest border, but will also significantly increase the chances of asylum seekers from Latin American countries, who lack access to air travel and must travel overland to the U.S. border, to receive expedited access enrollment through CBP One™ at ports of entry on the southwest border because the total daily number of people attempting to enroll there will be reduced by others enrolling at international airports.

In addition, there are now more frequent cases when the authorities of some states (usually republican), who do not want to see asylum seekers, send them by bus or domestic air flights to other states (usually democratic). As a result, these asylum seekers, who have already endured a lot of hardships on their way to the United States, are subjected to even more stress and humiliation. The above

measures will allow such asylum seekers to arrive immediately in those states whose authorities approve the addition of international airports in their states to the CBP One app for hosting asylum seekers who have flown directly to the United States from other countries.

Simultaneously, the above measures fully take into account the interests of each state individually, because it is the authorities of each individual state that will decide for themselves whether to add international airports in their state to the CBP One™ application.

**C. Procedural History.** DHS and DOJ as one of the Defendants in this case never responded to my above mentioned comment to the Rule «Circumvention of Lawful Pathways» (comment ID USCIS-2022-0016-51963), posted June 12, 2023 on the official government website www.regulations.gov.

On February 8, 2024, I forwarded to the ACLU as one of the Plaintiffs in this case by email: «If the parties intend to reach an amicable agreement to change the disputed Rule "Circumvention of Lawful Pathways", can I submit through you my proposals (add international airports within the United States to the CBP One app as ports of entry) for such changes?». Like DHS and DOJ, ACLU do not answered me.

On April 3, 2024 and on April 4, 2024, I again wrote to DOJ and ACLU by email the same letters proposing my changes (add international airports within the

United States to the CBP One app as ports of entry) to the disputed Rule. Wherein, I indicated in these letters: «If DOJ and ACLU do not consider my proposals above in their settlement negotiations, I may file an amicus curiae brief with the Ninth Circuit in case No. 23-16032 regarding my proposed changes to the challenged Rule, or I may become directly involved in the litigation myself with the involvement of my lawyers in the USA». DOJ and ACLU again do not answered me.

In this case Defendants repeatedly held that Plaintiffs have no standing to challenge the Rule because the Rule governs the right to asylum for certain noncitizens and the plaintiff entities lack any "judicially cognizable interest" in how the executive branch enforces immigration laws against third parties.

In turn, as a foreign national seeking asylum in the United States but unwilling to be kidnapped and killed by human traffickers in Mexico, I have "judicially cognizable interest" in the outcome of this case, but I have not been asked to participate in any settlement discussions, like and others millions of asylum seekers.

## **STANDARDS**

No rule specifically governs intervention in a case pending before this Court. But the Supreme Court has pointed to Federal Rule of Civil Procedure 24 as a "helpful analog[y]" for appellate courts because it reflects the "policies underlying intervention" in the district courts. *Int'l Union, United Auto., Aerospace & Agric.*

*Implement Workers of Am. v. Scofield*, 382 U.S. 205, 216 & n.10 (1965).

Under Rule 24, a "court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (intervention of right). And a "court *may* permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). (permissive intervention). Intervention must be timely sought.

This Court "normally follow[s] 'practical and equitable considerations' and construe[s] the Rule 'broadly in favor of proposed intervenors.'" *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)). It is the Court's policy to "involv[e] as many apparently concerned persons as is compatible with efficiency and due process." *Id.*

## ARGUMENT

I satisfy Rule 24's requirements for intervention as of right and for permissive intervention. The motion is timely, I have protectable interests in the action, defendants' appeal threatens my interests, and Plaintiffs do not adequately represent my interests.

# I.     Intervention as of Right.

## A.     The Motion is Timely.

No information about the progress of this case has been published in the press or covered in media news for quite a long time (approximately since the fall of last year). Even the official websites of the Plaintiffs themselves contain long-outdated information about this case. In addition, the official website of this Court states that "As of March 1, 2024, we are no longer providing a "cases of interest" page on this site.". Previously, information about this case was published on this "cases of interest" page, but now it is no longer available. Thus, the public, including myself, lacks the ability to monitor this case and respond to changes in this case in a timely manner.

That's why the Court should find this motion to be timely. "Determination of the timeliness of a motion to intervene depends upon (1) 'the stage of the proceeding,' (2) 'the prejudice to other parties,' and (3) 'the reason for and length of the delay.'" *Day*, 505 F.3d at 965 (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)).

The timeliness inquiry is contextual, and in this case, the third factor—the reason for the delay—should inform the others and ultimately be dispositive. I did not intervene earlier because I believed that my interests would be well represented in this litigation; for a time, they were. Plaintiffs vigorously disputed the Rule

below. They won in the district court. In the order dated August 3, 2023, the stay of the district court's decision was justified by the expedited disposition of defendants' appeal in this case. But after oral argument took place only on November 7, 2023, almost three months have passed, and the decision was never made by this Court.

Then, after my emails, Plaintiffs announced on February 5, 2024, that they may not disputed the Rule. Without much explanation, Plaintiffs filed a joint motion to hold this appeal in abeyance while the parties "engage[] in discussions regarding the Rule's implementation and whether a settlement could eliminate the need for further litigation." DE83 at 2. Based on those representations, the Court granted the motion on February 21, 2024. DE84. This late-breaking development that Plaintiffs may not represent my interests in the Rule is the sole cause for the delay.

I acted quickly to bring this motion as soon as I understood that DOJ and ACLU will never answer me. I acted promptly when I identified the triggering event for intervention. *See Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 823 (9th Cir. 2021) ("Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, *not the date it learned of the litigation*."). Consequently, the third factor — the length of the delay and reason for the delay — strongly supports the motion's timeliness.

As to the stage of proceedings, the case is not so far progressed that intervention would be unduly disruptive or wasteful of court resources. The amended

complaint was filed on May 18, 2023. I did not miss much in the district court proceedings—motions for summary judgment were briefed, argued, and decided in a matter of weeks. This is an APA case in which the district court "determine[d] whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." N.D. Cal. DE187 at 7. There was no protracted discovery. Thus, the stage of the proceedings is not so far along that intervention would cause a problem. *See, e.g.*, *Legal Aid Soc. of Alameda Co. v. Dunlop*, 618 F.2d 48, 50–51 (9th Cir. 1980) (counting posture of case in favor of intervention where case had not progressed beyond summary judgment).

Although the appeal has already been briefed and argued, I do not propose intervening in order to influence the Court's decision on the merits (unless invited to do so). I seek to participate in settlement negotiations and make proposals for settlement and to dispute the Rule if needed. The Court should grant intervention here because Plaintiffs have indicated an unwillingness to dispute the Rule to the end. The intervention here before the panel decision is not too late.

Finally, the timing of this motion does not prejudice any of the parties. They cannot complain that I should have intervened sooner because it appeared until now that Plaintiffs were representing my interests. Moreover, there is no important litigation milestone, such as a trial date, a hearing, or a briefing schedule, anywhere on the horizon. The court below lacks jurisdiction to act upon matters pending

before this Court until the appeal is resolved. Participation by me would not upset any contemplated proceedings here or in the district court. The appeal has already been briefed and submitted for decision.

**B.    Interests of Millions of Asylum Seekers Would be Impaired if Defendants Prevail.**

In the disputed Rule (IV. Belief that the rule will increase smuggling or human trafficking) indicated that DHS recently created alternative means for asylum seekers to travel to the United States by air through CHNV parole procedures to allow asylum seekers to travel directly to the United States without having to travel through Central America, where they may become victims of smugglers and human traffickers. However, these CHNV parole procedures are only available for asylum seekers from a few countries in the Western Hemisphere.

September 28, 2023, in a Supporting Statement for Paperwork Reduction Act Submission "Welcome Corps Application 1405-0256" (8. Document publication) in response to my proposal for a new parole program for anti-war Russian citizens, given their problems accessing refugee protection outside of Russia, in particular Europe, the U.S. Department of State notes that "we are unable to implement USRAP in Russia at this time due to host country government requirements and security concerns," and further notes that "the INA provides the Secretary of Homeland Security with parole authority, which he can use it at its own discretion," therefore, the implementation of the new parole program for anti-

16

war Russians falls under the authority of the Secretary of Homeland Security.

January 12, 2024, I sent my letters about the new parole program for anti-war Russians to the President of the United States and to the Secretary of Homeland Security by mail (I don't know for sure what complex bureaucratic path my letters went through after they were received by the addressees, but as I understand it, my letters ultimately ended up in USCIS).

After that I almost six months carried on meaningless correspondence with USCIS Contact Center the following content: «We referred your letters to the USCIS Contact Center. The case number for your letters is case #31478278. We understand your concerns and will give you accurate information and guidance. The Special Cases Unit has forwarded your letters to the appropriate office for review.», but never received a final answer from this "appropriate office" about the possibility (or impossibility) to implement the new parole program for anti-war Russians, who physically located in Russia and seeking asylum in the USA.

And this is not surprising, because in its latest official documents (for example - a Rule «U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements» on 01/31/2024 *See* 89 Fed. Reg. 6194), DHS has already openly stated that new parole programs are introduced solely on the basis of political interests and therefore the likelihood of their application to the majority of asylum seekers is zero.

Moreover, February 21, 2024, the Secretary of State announced a visa restriction policy that targets owners, executives, and senior officials of companies providing transportation by land, sea, or charter air designed to the U.S. southwest border, and thus deprived many asylum seekers of the ability to use even the few ports of entry on the southwest border that are available through CPB One app.

Thus, maintaining the disputed Rule in its current form, without making the necessary changes to it in terms of add international airports within the United States to the CBP One app as ports of entry, will lead to the fact that the interests of millions of asylum seekers will be impaired.

## C.     The Plaintiffs Do Not Adequately Represent My Interests.

I must show only "that representation of [my] interests 'may be' inadequate," and "the burden of making this showing is minimal." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). Intervention is warranted unless the proposed intervenors and the party clearly share the same goals. *Cf. League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997) (affirming denial where the "ultimate objective" of proposed intervenors was "identical to that of the current plaintiffs in the litigation").

It is now clear that Plaintiffs will *not* provide adequate representation of the my interests in disputing the Rule. Plaintiffs vigorously disputed the Rule—until they mysteriously stopped. They seeks to settle with Defendants who are protecting

the Rule. It is "impossible to know the government's exact motives for its current course of action  because it hasn't even attempted to tell us," DE84 at 15 (VanDyke, J., dissenting).  Accordingly, it is also impossible for me to rely on Plaintiffs to support my interests.

This is not merely a case where Plaintiffs may not "make all of the intervenor's arguments" or "neglect[]" some "element to the proceedings." *Sagebrush Rebellion*, 713 F.2d at 528. Indeed, Plaintiffs propose giving up the entire case. There could be no greater departure from the my interests.

I thus have good reason to believe my interests are not represented. At a minimum, I "offer[] a perspective which differs materially from that of the present parties to this litigation." *Sagebrush Rebellion*, 713 F.2d at 528.

Fortunately, the law does not require I to sit back and hope that an adequate representative will advocate for me. That is why the burden for this factor is "minimal." The divergence in views about how this appeal (and any potential settlement) should be handled is much more than minimal. Respectfully, I should be allowed to intervene as a matter of right.

## II.    I Should Be Allowed to Intervene Permissively.

Even if the proposed intervenors do not have a *right* to enter this case, the Court still can (and should) permit them to enter. *See* Fed. R. Civ. P. 24(b). Under Rule 24(b), the Court considers whether the intervention is timely and whether the

intervenor's claim or defense "shares with the main action a common question." *Id.* I do not seek to bring any new counterclaims or cross-claims, so no independent jurisdictional basis is required. *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). For the reasons above, I have filed a timely motion and have claims in common with the main action—*viz.*, I seek to dispute the Rule, while Defendants want it preserved.

## III. This Court's experience with a similar motion by the States to intervene in this case.

May 22, 2024 the panel issued an order denying a motion to intervene filed by the States of Alabama, Kansas, Georgia, Louisiana, and West Virginia.

But in this order the panel also indicated: «This is not to say that intervention at the appellate stage is impossible. We have, in appropriate circumstances, permitted intervention when the relevant factors are satisfied».

Lawrence VanDyke, Circuit Judge, dissenting: «Our court has continually acknowledged that we should construe Rule 24(a)(2)'s requirements for intervention as of right "broadly in favor of proposed intervenors." Wilderness Soc'y v. U.S. Forest Serv., 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (citation omitted); see also Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 818 (9th Cir. 2001) ("In general, we construe Rule 24(a) liberally in favor of potential intervenors."); U.S. ex rel. McGough v. Covington Techs. Co., 967 F.2d 1391,

1394 (9th Cir. 1992). We have explained that this "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." Wilderness Soc'y, 630 F.3d at 1179 (quoting United States v. City of Los Angeles, 288 F.3d 391, 397–98 (9th Cir. 2002))».

In dissent by Judge VanDyke also indicated: «The majority emphasizes that intervention at the appellate stage is not "impossible"».

Thus, the standard for intervention as of right is permissive and should be "construe[d] … broadly in favor of proposed intervenors." Wilderness Soc'y, 630 F.3d at 1179 (cleaned up). Under this lenient standard, my motion is timely, my significantly protectable interests may be impaired by a disposition of this case, and my interests are inadequately represented by the Plaintiffs. Therefore this Court should grant my motion to intervene in this case.

## CONCLUSION

The Court should grant my motion to intervene.

June 17, 2024

Respectfully submitted,

/s/

NIKOLAI BELOV
ST. MOSKOVSKAYA, 89/8
APT. 127
ASTRAKHAN, ASTRAKHAN
REGION 414056
RUSSIA
+7 968 078-90-68
belov.nikolai.nikolaevich@gmail.com

21

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Certificate of Compliance

**9th Cir. Case Number(s)** _ 23-16032 _____

I am the attorney or self-represented party.

**This brief contains** 4,896 _____**words,** including_ 2 ___words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 27(d)(1)(E) and FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of FRAP 27(d)(2)(A).

**Signature**_ /s/ _____ **Date**_ June 17, 2024 _