# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| East Bay Sanctuary Covenant, *et al.*, <br><br> Plaintiffs-Appellees, <br> v. <br><br> Donald J. Trump, President of the United States, in his official capacity, *et al.*, <br><br> Defendants-Appellants. | No. 23-16032 |

## NOTICE

On February 21, 2024, this Court placed this appeal "in abeyance pending the parties' settlement discussions." Order (Feb. 21, 2024). On February 5, 2025, the parties notified the Court that settlement discussions had concluded and requested that the Court extend the abeyance for 14 days to permit the parties to provide their views on appropriate next steps. The following day, the Court ordered the parties to provide those views within 14 days and extended the abeyance pending that filing. *See* Order (Feb. 6, 2025).

The parties now submit this filing in response to that order. The parties have conferred and have been unable to reach agreement on the appropriate next steps in this litigation. The parties' respective views on that question are laid out below.

The Government's Position:

The government believes that it would be appropriate for the Court to remove this case from abeyance and order supplemental briefing regarding plaintiffs' standing. Plaintiffs' claim to organizational standing rests on their allegations that the Rule "will frustrate their organizational goals, require diversion of resources, and substantially affect their funding." Resp. Br. 14 (quotation omitted). Since this appeal was briefed and argued, the Supreme Court clarified in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), that "plaintiffs must allege more than that their mission or goal has been frustrated—they must plead facts showing that their core activities are directly affected by the defendant's conduct," *Arizona All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1172 (9th Cir. 2024), *pet. for rehearing en banc filed* Oct. 4, 2024. As this Court has recognized, the Ninth Circuit precedents on which plaintiffs' standing theory relied are "irreconcilable" with *Hippocratic Medicine* and are "thus overruled." *Id.* at 1178. The government thus believes it would be helpful to the Court for the parties to provide supplemental briefing on plaintiffs' standing in light of those intervening decisions.

Plaintiffs' counsel have informed the government that plaintiffs seek a remand to the district court for further consideration not only of standing but also of other developments since the final judgment in this case. Such a remand would be procedurally improper and would unnecessarily complicate this litigation.

Procedurally, the district court has already issued a final judgment, and the government has appealed and obtained a stay pending appeal. We do not understand

plaintiffs to acknowledge that the district court's judgment was in error—which would in any event require reversal and not a remand—and plaintiffs are not entitled to attempt to bolster their case in district court before this Court resolves this appeal.

A remand would in any event not be an economical use of the parties' and the Court's resources. The question whether plaintiffs have adequately established standing to bring this suit is a purely legal question, which the parties have already addressed in their merits briefs (albeit without the benefit of the intervening decisions discussed above) and which this Court is well-situated to address without additional proceedings in district court. And in addition to being irrelevant to the propriety of the judgment currently under review, any other issues plaintiffs seek to raise based on developments after the entry of final judgment would not even raise an Article III case or controversy unless plaintiffs could establish standing, providing a further reason for this Court to resolve that issue now.

At an absolute minimum, if the Court is inclined to remand the case to district court for further proceedings, it must first vacate the district court's final judgment (though, as noted, there is no basis to do that unless plaintiffs acknowledge, or this Court concludes, that the judgment was rendered in error). Otherwise, it is unclear what authority the district court would have to conduct additional proceedings at this point, long after entering final judgment. The Court should further make clear that any fresh judgment in plaintiffs' favor that might be rendered on remand should remain stayed pending any appeal by the government, as intervening Supreme Court

precedent favorable to the government and the passage of time should not jeopardize the stay pending appeal that this Court has already issued.

Plaintiffs' Position:

Plaintiffs propose that this Court vacate the judgment below and remand for the district court to consider in the first instance both (1) whether Plaintiffs have standing to challenge the Rule in light of the intervening precedents the government cites above; and (2) the impact of the government's termination of the so-called "lawful pathways" underpinning the legal and policy justifications for the Rule.

First, remand is appropriate so the district court can consider the standing issue. This Court has repeatedly held that the best approach is for the district court to consider the impact of intervening precedent in the first instance. *See, e.g.*, *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 836-37 (9th Cir. 2021); *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1027 (9th Cir. 2014); *Betz v. Trainer Wortham & Co.*, 610 F.3d 1169, 1170-71 (9th Cir. 2010); *Baker v. Hazelwood (In re Exxon Valdez)*, 270 F.3d 1215, 1241 (9th Cir. 2001); *White Mountain Apache Tribe v. State of Ariz., Dep't of Game & Fish*, 649 F.2d 1274, 1286 (9th Cir. 1981).

Here, moreover, remand on the standing issue is especially appropriate because Plaintiffs submitted declarations based on then-existing case law. Should the district court conclude that the requirements for organizational standing have been altered in any relevant way, Plaintiffs should have the opportunity to submit supplemental

declarations in the district court. *See, e.g.*, *Inland Empire Waterkeeper*, 17 F.4th at 836; *Betz*, 610 F.3d at 1171.

Second, remand is also appropriate so that the district court can consider in the first instance the impact of the termination of the so-called "lawful pathways" on the Rule's legality and rationality. The Rule is titled "Circumvention of Lawful Pathways" and is explicitly premised on the existence of what it calls "orderly options for migrants to lawfully enter the United States." 88 Fed. Reg. 31314, 31317 (May 16, 2023). The most prominent of these "pathways" were the CBP One system for scheduling appointments at southern border ports of entry and country-specific parole programs for Cuban, Haitian, Nicaraguan, and Venezuelan ("CHNV") nationals. *Id.* The new administration has now shut down these so-called "lawful pathways." *See* Executive Order 14165 § 7(a)-(b), 90 Fed. Reg. 8467, 8468 (Jan. 20, 2025) (terminating the CBP One scheduling system and the CHNV parole programs).

These developments go to the heart of whether the Rule is consistent with the asylum statute Congress enacted and whether the Rule is arbitrary and capricious. The stated rationale of the Rule is to incentivize asylum seekers to use the so-called "lawful pathways" by barring asylum to those who cross the southern border without CBP One appointments. *See, e.g.*, Appellants' Br. 1-2, 9-11, 37-38. And the existence of those "pathways" has been central to the government's defense of the Rule in this litigation. *See, e.g., id.* at 34-37 (arguing that the Rule is not inconsistent with the asylum statute under this Court's previous decisions because noncitizens can avoid

the asylum bar by presenting at ports of entry with CBP One appointments or using the CHNV parole programs); *id.* at 40 (stating that "[t]he interdependence of policies is particularly salient here" in evaluating whether the Rule is arbitrary and capricious).

In Plaintiffs' view, it is therefore appropriate for the parties to address how these developments impact the merits of this case. *See, e.g.*, Dkt. Nos. 74, 77, 78, *Las Am. Immigrant Advocacy Ctr. v. DHS*, Case No. 1:24-cv-01702 (D.D.C.) (supplemental briefing concerning the impact of the termination of the CBP One system on the legality of a separate asylum restriction also premised on the existence of that system). And the district court should consider the parties' arguments on those issues in the first instance. *See, e.g.*, *Bafford v. Admin. Comm. of Northrop Grumman Pension Plan*, 101 F.4th 641, 657 (9th Cir. 2024) ("As a general rule, a federal appellate court does not consider an issue not passed upon below.") (cleaned up); *NRDC, Inc. v. Winter*, 513 F.3d 920, 922 (9th Cir. 2008) (remanding Administrative Procedure Act suit "to allow the district court in the first instance to determine the effect" of two intervening policy developments on the legality of the challenged agency action); *Creech v. Tewalt*,

84 F.4th 777, 794 n.7 (9th Cir. 2023) (noting this Court's discretion to remand in light of "factual developments postdating the district court's judgment").

        Respectfully submitted,

        BRETT A. SHUMATE
         *Principal Deputy Assistant Attorney General*

        DANIEL TENNY

        *s/ Sean R. Janda*
        SEAN R. JANDA
        BRIAN J. SPRINGER
         *Attorneys, Appellate Staff*
         *Civil Division, Room 7260*
         *U.S. Department of Justice*
         *950 Pennsylvania Avenue NW*
         *Washington, D.C. 20530*
         *(202) 514-3388*

        MORGAN RUSSELL

        *s/ Morgan Russell*
        Morgan Russell
        ACLU FOUNDATION
        IMMIGRANTS' RIGHTS PROJECT
        425 California Street, Suite 700
        San Francisco, CA 94104
        T: (415) 343-0770
        mrussell@aclu.org

February 2025