**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| EAST BAY SANCTUARY COVENANT; CENTRAL AMERICAN RESOURCE CENTER; TAHIRIH JUSTICE CENTER; NATIONAL CENTER FOR LESBIAN RIGHTS; IMMIGRANT DEFENDERS LAW CENTER; AMERICAN GATEWAYS, *Plaintiffs-Appellees*, v. DONALD J. TRUMP, President of the United States; PAMELA BONDI, Attorney General; UNITED STATES DEPARTMENT OF JUSTICE; SIRCE E. OWEN; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; KRISTI NOEM; U.S. DEPARTMENT OF HOMELAND SECURITY; KIKA SCOTT; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; PETE R. FLORES; UNITED STATES CUSTOMS AND BORDER PROTECTION, *Defendants-Appellants*. | No. 23-16032 D.C. No. 4:18-cv-06810-JST ORDER |

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted November 7, 2023
Submission Vacated February 21, 2024
Resubmitted April 10, 2025
Pasadena, California

Filed April 10, 2025

Before:  William A. Fletcher, Richard A. Paez, and
Lawrence VanDyke, Circuit Judges.

Order;
Concurrence by Judge VanDyke

## SUMMARY[*]

### Immigration

In an appeal in which the government challenged the district court's judgment vacating a rule called Circumvention of Lawful Pathways ("the Rule"), the panel vacated its prior order staying the case pending settlement discussions (which were ultimately not successful); vacated the district court's July 25, 2023, judgment; and remanded for the district court to address: (1) the impact of *Food and*

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

*Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), on the issue of organizational standing; and (2) the impact of Executive Order 14165 § 7(a)–(b), which terminated the "lawful pathways" on which the Rule relies in part.

Concurring in the judgment, Judge VanDyke reluctantly agreed with the decision to remand, but wrote separately to point out how the latest chapter in this sad, protracted saga powerfully illustrates an unhealthy condition afflicting the very foundations of our national government. Judge VanDyke wrote that the problem is the ease with which one just one (district) or two (circuit) judges can effectively dictate nationwide policy on monumental issues for very long periods of time with no plenary Supreme Court review of the merits—indeed, sometimes longer than any single president could ever serve. That is starkly demonstrated by this case, where after the better part of a decade of what appears to be an extended game of Supreme Court keep-away this case is now being sent back to the district court for essentially a full restart. But all the controversial and flawed circuit precedent it created and reinforced remains, binding the hands of the executive branch, district courts, and future panels of this court on critical immigration policies.

## COUNSEL

Brian M. Boynton (argued), Principal Deputy Assistant Attorney General; Daniel J. Tenny, Sean R. Janda, and Brian J. Springer, Appellate Staff Attorneys; Civil Division, United States Department of Justice, Washington, D.C.; Christina P. Greer and Patrick J. Glen, Senior Litigation Counsel; Erez Reuveni, Assistant Director; William C.

Peachey, Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellants.

Spencer E. Wittmann Amdur (argued), Katrina L. Eiland, Morgan Russell, Oscar S. Roman, and Cody Wofsy, American Civil Liberties Union Foundation Immigrants' Rights Project, San Francisco, California; Michelle Y. Cho, American Civil Liberties Union Foundation of Northern California, San Francisco, California; Lee P. Gelernt, Omar C. Jadwat, Wafa Junaid, and Judy Rabinovitz, American Civil Liberties Union Foundation Immigrants' Rights Project, New York, New York; Melissa E. Crow, Center for Gender & Refugee Studies, Washington, D.C.; Anne E. Peterson, Blaine Bookey, Julie B. Bourdoiseau, and Karen Musalo, Center for Gender & Refugee Studies, San Francisco, California; Robert Pauw, Gibbs Houston Pauw, Seattle, Washington; Keren H. Zwick, Richard Caldarone, Colleen Cowgill, and Mary Georgevich, National Immigrant Justice Center, Chicago, Illinois; Angelo Guisado and Baher Azmy, Center for Constitutional Rights, New York, New York; for Plaintiffs-Appellees.

Matt A. Crapo and Christopher J. Hajec, Immigration Reform Law Institute, Washington, D.C., for Amicus Curiae Immigration Reform Law Institute.

Katherine L. Evans and Charles S. Ellison, Duke University School of Law Immigrant Rights Clinic, Durham, North Carolina, for Amici Curiae Professors of Immigration Law.

Ashley B. Vinson, Akin Gump Strauss Hauer & Feld LLP, San Francisco, California, for Amici Curiae Former Immigration Judges & Former Members of the Board of Immigration Appeals.

Alice Farmer, Office of the United Nations High Commissioner for Refugees, Washington, D.C.; Robert R. Anderson, Arnold & Porter Kaye Scholer LLP, Denver, Colorado; Samuel M. Witten and Kaitlin Konkel, Arnold & Porter Kaye Scholer LLP, Washington, D.C.; for Amicus Curiae Office of the United Nations High Commissioner for Refugees.

Kathleen R. Hartnett and Zoë Helstrom, Cooley LLP, San Francisco, California, for Amicus Curiae National Citizenship and Immigration Services Council 119.

Cameron C. Russell and Rebecca Berman, Freshfields Bruckhaus Deringer US LLP, New York, New York; Justina Sessions and J. Mia Tsui, Freshfields Bruckhaus Deringer US LLP, Redwood City, California; Seve Kale, Freshfields Bruckhaus Deringer US LLP, Washington, D.C.; for Amici Curiae Asylum Access México A.C. and Instituto para las Mujeres en la Migración A.C..

Anwen Hughes, Christina Asencio, Rebecca Gendelman, and Licha M. Nyiendo, Human Rights First, New York, New York; Farida Chehata, Human Rights First, Los Angeles, California; for Amici Curiae Human Rights and Legal Services Organizations.

Neville S. Hedley, Hamilton Lincoln Law Institute, Washington, D.C., for Amicus Curiae Hamilton Lincoln Law Institute.

Allen Huang, Deputy State Attorney General, Office of the Florida Attorney General, Tampa, Florida; Bridget K. O'Hickey, Assistant Solicitor General; James H. Percival, Chief of Staff; Henry C. Whitaker, Solicitor General, Ashley Moody, Attorney General of Florida; Office of the Florida Attorney General, Tallahassee, Florida; Tim Griffin,

Attorney General of Arkansas, Office of the Arkansas Attorney General, Little Rock, Arkansas; Theodore E. Rokita, Attorney General of Indiana, Office of the Indiana Attorney General, Indianapolis, Indiana; Brenna Bird, Attorney General of Iowa, Office of the Iowa Attorney General, Des Moines, Iowa; Russell Coleman, Attorney General of Kentucky, Office of the Kentucky Attorney General, Frankfort, Kentucky; Lynn Fitch, Attorney General of Mississippi, Office of the Mississippi Attorney General, Jackson, Mississippi; Andrew Bailey, Attorney General of Missouri, Office of the Missouri Attorney General; Kansas City, Missouri; Austin Knudsen, Attorney General of Montana, Office of the Montana Attorney General, Helena, Montana; Mike Hilgers, Attorney General of Nebraska, Office of the Nebraska Attorney General, Lincoln, Nebraska; John Formella, Attorney General of New Hampshire, Office of the New Hampshire Attorney General, Concord, New Hampshire; Drew Wrigley, Attorney General of North Dakota, Office of the North Dakota Attorney General, Bismark, North Dakota; Dave Yost, Attorney General of Ohio, Office of the Ohio Attorney General, Columbus, Ohio; Alan Wilson, Attorney General of South Carolina, Office of the South Carolina Attorney General, Columbia, South Carolina; Marty Jackley, Attorney General of South Dakota, Office of the South Dakota Attorney General, Pierre, South Dakota; Ken Paxton, Attorney General of Texas, Office of the Texas Attorney General, Austin, Texas; Sean Reyes, Attorney General of Utah, Office of the Utah Attorney General, Salt Lake City, Utah; Jason Miyares, Attorney General of Virginia, Office of the Virginia Attorney General, Richmond, Virginia; for Amici Curiae States of Florida, Arkansas, Indiana, Iowa, Kentucky, Mississippi, Missouri, Montana, Nebraska, New Hampshire,

North Dakota, Ohio, South Carolina, South Dakota, Texas, Utah, and Virginia

**ORDER**

In this appeal, the government challenges the district court's judgment vacating a rule called Circumvention of Lawful Pathways ("the Rule"). *See* 88 Fed. Reg. 31314 (May 16, 2023); *E. Bay Sanctuary Covenant v. Biden*, 683 F. Supp. 3d 1025 (N.D. Cal. 2023).

Following oral argument, we granted the parties' request to place this appeal in abeyance pending the parties' settlement discussions. On February 5, 2025, the parties notified the court that their settlement discussions were not successful, and requested an opportunity to provide their views on how we should proceed with this appeal given legal and factual developments while the case was in abeyance. We granted the request and invited the parties' views. Having considered the parties' submissions, we order the following:

1. The stay previously entered by the court on August 3, 2023, is vacated.

2. The district court's judgment entered on July 25, 2023, is vacated and the matter is remanded to the district court for further proceedings.

In the intervening months since the completion of briefing in this case, the Supreme Court decided *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024). Among other issues, the Court provided new guidance on how organizations may establish standing to sue on their own behalf. *Id.* at 394–96.

Organizational standing is an issue in this appeal.  Because the parties and the district court did not have the benefit of *Hippocratic Medicine*, the district court should address its impact in the first instance.  We express no views on that question.  The district court may proceed as it deems appropriate, including by permitting the submission of supplemental evidence by the parties.

Further, Executive Order 14165 § 7(a)–(b), terminated the "lawful pathways" on which the Rule relies in part.  90 Fed. Reg. 8467, 8468 (Jan. 20, 2025); 88 Fed. Reg. 31314, 31317 (May 16, 2023).  The district court should also address what impact this presidential order has on this case.

3. The filing of this order shall constitute the court's mandate.

4. The parties shall bear their own costs on appeal.

**VACATED and REMANDED for further proceedings.**

---

VANDYKE, Circuit Judge, concurring in the judgment:

This case has been going on for the better part of a decade.  And now we are sending it back to the district court to essentially restart from scratch.  But even though this case is getting a full reboot, the controversial and flawed circuit precedent it created and reinforced remains, binding the hands of district courts, future panels of this court, and the executive branch on critical immigration policies.  So although I reluctantly agree with my panel colleagues that we should remand this case to the district court for reconsideration of the plaintiff organizations' Article III standing, I write separately to point out how the latest

chapter in this sad, protracted saga powerfully illustrates an unhealthy condition afflicting the very foundations of our national government.

The first challenge is the ease with which just one (district) or two (circuit) judges can effectively dictate nationwide policy on monumental issues, even where the legal validity of the judges' decisions is dubious.  That of course is hardly a secret; indeed, it is currently a topic of robust national conversation.

The second challenge is related, but less well known, and so bears discussion.  This problem is that one or two unelected judges do not just prescribe national policy on prominent issues, but their policy prescriptions, even when controversial and legally suspect, often last for *very* long periods of time with no plenary Supreme Court review of the merits—and often longer than any single President could ever serve.  The reason that is problematic should be clear enough.  It is already controversial when the *head* of the third branch of government—the Supreme Court—unilaterally settles the law in a way that trumps the other co-equal branches, especially on nationally significant issues.  But it is another thing altogether for the foot or some other random part of the sprawling third branch to tie up national policymaking with *unsettled*, highly questionable legal decisions—particularly when those doubtful decisions can persist for a decade or more with no accountability from the Supreme Court.  And yet that is the unfortunate state of things, as this long-running case shows well.

Indeed, the history of this case tells the whole story, which is why I must retell it.  It began in 2018 when the first Trump administration promulgated the Port of Entry Rule restricting asylum eligibility for aliens who entered the

United States outside a designated port of entry.[1]  Eight months later, the same administration implemented the Transit Rule, which restricted asylum eligibility for aliens who passed through another country on their way to the United States without first seeking asylum in that country.[2]  Organizational plaintiffs challenged each of these immigration rules in the Northern District of California, where the same judge set aside both rules after finding that the organizations could bring suit.[3]  The basis for those standing determinations?  The Ninth Circuit's much-maligned organizational standing precedents.[4]

---

[1] Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations; Procedures for Protection Claims, 83 Fed. Reg. 55934 (Nov. 9, 2018).

[2] Asylum Eligibility and Procedural Modifications, 84 Fed. Reg. 33829 (July 16, 2019).

[3] *E. Bay Sanctuary Covenant v. Barr*, 385 F. Supp. 3d 922, 937–38 (N.D. Cal. 2019); *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1108–11 (N.D. Cal. 2018); *E. Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838, 848–54 (N.D. Cal. 2018).

[4] *See, e.g.*, *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 693 (9th Cir. 2021) (en banc) (Bumatay, J., dissenting from the denial of rehearing en banc) ("By loosening organizational standing requirements, we only increase our own authority to adjudicate policy disputes … [and] no longer need to wait for a rule … to actually injure a party.  Now, we can skip ahead and immediately superintend any policy disagreement from the get-go by entertaining the bevy of public interest organizations willing to challenge the disfavored policy du jour.  That makes us a super-legislature, not a court."); *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1224 (9th Cir. 2012) (Ikuta, J., concurring in part and dissenting in part) ("How can an organization have a legally protected interest in *not* spending money to advance its core mission?" (emphasis in original)).

The administration appealed to the Ninth Circuit, where the merits panels reinforced our circuit's loosey goosey organizational standing precedents and ultimately affirmed the district judge setting aside the Trump administration's immigration rules.[5] Soon after, the Biden administration replaced the Trump administration as a party. But the Biden administration chose not to seek Supreme Court review in either case—even though the cases appeared to be a likely win in the Supreme Court[6]—so both cases returned from our court to the same district judge with fortified organizational standing precedents in tow.

Instead of pursuing a win from the Supreme Court (which, even in the unlikely event the government didn't win, would still have had the valuable effect of definitively settling whether our circuit's doubtful immigration rulings had legal merit), the Biden administration made the legally (but not politically) inexplicable decision to simply repromulgate with some minor tweaks the Trump administration's Port of Entry and Transit Rules that our

---

[5] *See E. Bay Sanctuary Covenant v. Biden*, 950 F.3d 1242 (9th Cir. 2020), *amended by*, 993 F.3d 640 (9th Cir. 2021); *E. Bay Sanctuary v. Covenant v. Garland*, 964 F.3d 832 (9th Cir. 2020), *amended by*, 994 F.3d 962 (9th Cir. 2021).

[6] The Supreme Court had earlier granted a stay of the lower court's decision in one of the cases, *Barr v. E. Bay Sanctuary Covenant*, 140 S. Ct. 3 (2019) (mem), and four justices had indicated they would have granted a stay in the other case, *Trump v. E. Bay Sanctuary Covenant*, 586 U.S. 1062 (2018) (mem). The standard for granting a stay requires the conclusion that the party receiving the stay has shown a strong likelihood of success on the merits. *Nken v. Holder*, 556 U.S. 418, 426 (2009).

court had already struck down.[7]  What happened next was eminently predictable: the organizational plaintiffs in this case just amended their complaint to challenge the Biden administration's new rule,[8] citing our court's recent precedent killing the Trump administration's rules. Unsurprisingly, the same district judge once again vacated the Biden administration's rule.[9]

But in a surprising turn of events, my circuit panel colleagues *granted* a stay pending appeal of that decision notwithstanding the completely contrary precedents they had created during the Trump administration.[10]  Why, you might wonder?  Well, the panel majority never told us,[11] but their stay had the obvious effect of keeping a petition for certiorari (or application for emergency relief) off the Justices' desks.[12]  And six months later, just as our panel was

---

[7] *E. Bay Sanctuary Covenant v. Biden*, No. 23-16032, 2023 WL 11662094, at *1 (9th Cir. Aug. 3, 2023) (VanDyke, J., dissenting from the grant of a stay pending appeal) ("This new rule looks like the Trump administration's Port of Entry Rule and Transit Rule got together, had a baby, and then dolled it up in a stylish modern outfit, complete with a phone app.").

[8] Circumvention of Lawful Pathways, 88 Fed. Reg. 31314 (May 16, 2023).

[9] *E. Bay Sanctuary Covenant v. Biden*, 683 F. Supp. 3d 1025 (N.D. Cal. 2023).

[10] *E. Bay*, 2023 WL 11662094, at *1 (majority's order granting a stay pending appeal).

[11] *Id.*

[12] *See id.* at *2 (VanDyke, J., dissenting from the grant of a stay pending appeal) (recognizing that "one … possible reason why my colleagues are granting a stay" is because "they see the writing on the wall that, if we don't stay the district court's vacatur, the Supreme Court likely will").

about to rule on the merits of the district court's vacatur of the Biden administration's rule, thereby again setting this case up for Supreme Court review, the parties asked us to place this appeal in abeyance for "settlement discussions." Why? Again, to channel Nate Bargatze on Saturday Night Live, "nobody knows."[13] But my colleagues happily obliged once more,[14] with the foreseeable result that the Biden administration would avoid the politically fraught difficulty of litigating and likely winning a high-profile immigration case at the Supreme Court during a presidential election season.[15]

Fast forward to 2025 and another administration change. Now that the organizational plaintiffs are no longer singing Kumbaya with a friendly administration, you'd think this case might finally be bound for Supreme Court review. Wrong. So much time has passed in this legal twilight zone that the law and facts in this case have potentially changed, requiring us to punt back to the district court—the latest play in this ongoing game of Supreme Court keep-away. Although these changes now command sending this case back to the district court, doing so will even further delay the Supreme Court's review of our circuit's immigration precedents for several more years (if ever), while keeping

---

[13] *E. Bay Sanctuary Covenant v. Biden*, 93 F.4th 1130, 1133 (9th Cir. 2024) (VanDyke, J., dissenting) (pointing out the Biden "administration's abrupt about-face" gave the "impression … that the administration [wa]s snatching defeat from the jaws of victory—*purposely* avoiding an ultimate win" (emphasis in original)).

[14] *Id.* at 1131 (majority's order placing appeal in abeyance).

[15] *Id.* at 1133 (VanDyke, J., dissenting) (noting that "the government's sudden and severe change in position looks a lot like a purely politically motivated attempt to throw the game at the last minute" and "colluding to avoid playing their politically fraught game during an election year").

our circuit's indefensible organizational standing precedents on life support in the process.

Which brings us squarely to the current national discussion—about how one or two lower court judges can set long-term policy decisions on major national issues for a very long time with little to no input from the Supreme Court.  Many criticize the Supreme Court as inappropriately ducking these issues.  But whether or not that criticism has merit, sometimes it isn't the Supreme Court *itself* that is avoiding review of nationally important legal issues—as the history of this long-running case clearly demonstrates.  It is lower court judges and litigants that are intentionally trying to keep these important matters away from high court scrutiny.

Here, judges on our circuit have engaged in a coordinated dance with sometimes-collusive litigants to manipulate proceedings in what makes little rational sense except as a sustained effort to safeguard a single judge's ability to both direct national policy and avoid Supreme Court review.  I can think of no other explanation for my colleagues' willingness to grant an unexplained (and wholly unsupported) stay to the Biden administration after previously ruling the opposite with regard to the Trump administration's very similar rules.[16]  Nor can I think of any other reason for the Biden administration's refusal to seek certiorari.  Nor for my colleagues' eagerness to help the parties' legally vacuous but apparently politically motivated request to place this case in abeyance.[17]

---

[16] *E. Bay*, 2023 WL 11662094, at *1–*2 (VanDyke, J., dissenting from the grant of a stay pending appeal).

[17] *E. Bay*, 93 F.4th at 1132–36 (VanDyke, J., dissenting).

All this intentional shielding from Supreme Court review is not good for our national government.  By the time this case percolates back through the court system and is ready for Supreme Court review—assuming it isn't judicially sidelined again—more than a decade will have passed where just one or two lower court judges will have imposed their preferences on critically important immigration policies for the entire nation.  And at that point there may be yet another administration change and perhaps another basis for arguing that this case still just isn't quite ready for the big leagues yet.  Meanwhile, key national issues can easily spend many years languishing in lower court purgatory, enabling one or two judges to dictate long-term national policy effectively free from Supreme Court oversight.

What can be done about this?  I'm not sure.  But what I do know is that it isn't healthy and, if it continues, people will lose faith in the judiciary.  So while I reluctantly concur in the decision to send this case back down for a restart, I also hope something will be done about the more fundamental flaws in the present functioning of our federal judicial system that this case embodies.  If something isn't done, I fear we are headed for a governmental crisis—and one where the least dangerous branch is likely to find itself on the losing end.